DENNIS P. CREEDON, Respondent, *v.* AUTOMATIC VOTING MACHINE CORPORATION, Appellant.

Fourth Department, January 9, 1935.

*Alexander S. Carlson* [*Edmund Port* and *Milton Macht* of counsel], for the appellant.

*Arthur J. Foley,* for the respondent.

EDGCOMB, J.   The sufficiency of plaintiff's complaint has been challenged, and we are called upon to decide if it states facts sufficient to constitute a cause of action.

Briefly stated, the pleading alleges the following facts:

At the general election in 1933 two assessors were to be elected in the city of Utica; Mr. Creedon, the plaintiff in the instant case, was one of six candidates for that office; defendant entered into

an agreement with the city to set up certain voting machines in various wards in the city for use on election day; defendant adjusted three of these machines in " a negligent, careless and improper manner, in that certain indorsing bars or levers were improperly connected on said voting machines, so that a vote cast for candidate Walsh also recorded a vote for candidate Thomas, and a vote cast for candidate Thomas also recorded a vote for candidate Walsh, with the result that almost fifty per cent more votes for the office of assessor were registered on said machines than were actually cast, the said excess votes being credited to candidates Walsh and Thomas;" defendant knew that the plaintiff was a candidate for assessor, and that the purpose of setting up and adjusting these machines was to enable the electors to vote for the candidate of their choice, and to correctly record and tabulate the ballots cast; that as a result of the maladjustment of said machines the official canvas of the board of canvassers made it appear that Walsh and Thomas were elected assessors, and that the plaintiff had been defeated, when in fact the plaintiff had actually been elected by a plurality of the votes cast; that such fact would have been evident had the voting machines been properly adjusted; that, as a result of the negligent and improper adjustment of said machines, the plaintiff was obliged to resort to the courts for an order to examine said machines, and to correct the errors and discrepancies which appeared thereon; that plaintiff was obliged to employ counsel in connection with said proceeding, and to incur expenses in connection therewith, all to his damage in the sum of $3,055.75.

This action is brought to recover the above amount.

If the plaintiff can recover here, it must be because of the violation of some duty which the defendant owed the plaintiff under its contract with the city of Utica, and not by reason of any breach of statutory or common-law duty.

It is undoubtedly true that a person may owe two separate and distinct obligations in respect to the same thing, one of a personal nature to a particular individual, growing out of a special or peculiar relation to him; the other of a general character to those who would necessarily be exposed to risks or danger through the negligent discharge of such duty. " If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such manner that those who are rightfully led to a course of conduct or action, on the faith that the act or duty will be duly and properly performed, shall not suffer loss or injury by reason of his negligence." (Whart. Neg. [2d ed.] § 437.) Such liability

is exemplified in the marked tendency of the courts to extend the responsibility of a manufacturer for injuries resulting from latent defects in articles which he puts on the market, and which are beset with danger to those who use them, to persons not in privity of contract with the manufacturer. This proneness is illustrated in such cases as *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382); *Rosebrock* v. *General Electric Co.* (236 id. 227); *Smith* v. *Peerless Glass Co.* (259 id. 292) and *Statler* v. *Ray Manufacturing Co.* (195 id. 478).

There is no analogy between these cases and the one now before us. The principle there enunciated relates only to appliances which are inherently beset with danger and are reasonably certain to imperil life or limb if carelessly made or negligently put on the market. Danger was not inborn in these voting machines.

It cannot be said that the defendant owed the plaintiff any duty of a general character, in relation to the manner in which these machines should be adjusted and made ready for use, upon which plaintiff could rely, and could regulate his course of conduct. Plaintiff cannot recover upon any such theory of negligence.

We, therefore, get back to the duty, if any, which defendant owed to the plaintiff under its contract with the city of Utica.

Undoubtedly this agreement carried with it an obligation on the part of the defendant to so set up these machines that the voters might have a reasonable opportunity to express their choice for the various candidates running for office at the election in question, and to have their votes properly counted. If that duty was violated, defendant would undoubtedly be liable to the city for any damages which it sustained by reason of defendant's negligence.

But that is not the question here. Plaintiff was not a party to the agreement in question; no consideration passed from him to the defendant; respondent was not led to any particular course of conduct on the faith that this contract would be faithfully performed by the voting machine company; so far as the record shows, plaintiff was ignorant of the existence of the agreement.

There can be no liability for negligence arising out of contractual relations unless there is privity, or its equivalent, between the person injured and the one whose act or omission caused the injury. (*Wainwright* v. *Queens County Water Co.*, 78 Hun, 146, 154.)

Plaintiff, however, asserts his right to recover under the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268), as extended and amplified by *Seaver* v. *Ransom* (224 id. 233).

In *Seaver* v. *Ransom*, Judge POUND enumerates the four instances where a beneficiary may sue on a contract made for his benefit.

We may eliminate from our consideration, as not applicable here, all the instances, except the public contract cases where a municipality seeks to protect its inhabitants by covenants made for their advantage.

In *Pond* v. *New Rochelle Water Co.* (183 N. Y. 330) we find enunciated the broad principle that, where a person makes a pledge to another for the benefit of a third party, the latter may maintain an action on the promise.

If the parties to the contract in question recognized the interest of the plaintiff in the agreement, and if it was their intention to give him a right of action upon the contract, there is no substantial reason why the plaintiff should not be permitted to maintain this action. Our attention, therefore, must be directed to that subject.

Nowhere in the complaint are any facts alleged to show that the contract in question was made for plaintiff's benefit, or that it was intended for his advantage. The statement that defendant knew that the purpose of the agreement was to enable the electors to vote for the candidate of their choice, and to have their preference accurately shown by an inspection of the machines, is hardly an allegation that the contract was made for plaintiff's benefit.

While the expenses connected with an election are a city charge, and while the duty rests upon the municipality to furnish the means, either by ballot or voting machines, by which the electors can express their choice for the various candidates to be voted for, the statute (Election Law, § 251) imposes upon the board of elections of each county the duty of causing the voting machines to be placed in proper order for voting, and empowers such board to appoint as many custodians as may be necessary for their proper preparation. The city owed no duty to the plaintiff, except the obligation which it owed to every voter in the municipality to give him an opportunity to express his choice for the various candidates for office, and to have his vote properly recorded.

The damage which the plaintiff claims to have sustained did not accrue to him as a voter, but rather as a candidate for an office to be voted for at the election in question. The city owes a contestant for office no legal duty as such. If a municipality fails to furnish proper means to enable a citizen to vote for the candidate of his choice, and such candidate is thereby defeated, he would have no legal remedy against the municipality. How, then, can it be said that the contract in question was made for the benefit of the plaintiff as a candidate, in which capacity he sustained the damages for which he seeks to recover in this action? If the agreement was not made for plaintiff's benefit, that ends this lawsuit.

But assuming for the moment that no distinction can be made between plaintiff as a citizen and voter, and plaintiff as a candidate for office, we still fail to find any intention on the part of the defendant to compensate the individual members of the public, be they voters or candidates, for damages resulting from a default on the part of the defendant to perform its contractual obligations. This is the underlying principle upon which the doctrine of these public contract cases is founded, and without it there can be no recovery.

The rule relating to the right of a beneficiary under a promise made to a municipality is stated in section 145 of the American Law Institute's Restatement of the Law of Contracts in the following language:

" A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

" (a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, or

" (b) the promisor's contract is with a municipality to render services the non-performance of which would subject the municipality to a duty to pay damages to those injured thereby."

The facts alleged in the complaint bring the defendant squarely within the above-quoted rule, and not within the exceptions. The vast preponderance of authority and precedent also deny plaintiff a recovery here.

In *Moch Co.* v. *Rensselaer Water Co.* (247 N. Y. 160) the city of Rensselaer made a contract with the defendant to furnish water for various city purposes. A fire broke out, and the water company failed to provide an adequate quantity of water with sufficient pressure to extinguish or stay the progress of the flames, and breached its contract with the city in that regard. As a result, plaintiff's warehouse was burned. In an action brought by the owner against the water company to recover for the loss of the building, the complaint was dismissed. It was held that no intention on the part of the parties to the original agreement to make the promisor answerable to the individual members of the public was discernible. It was stated that, while in a broad sense every city contract, not improvident or wasteful, is for the benefit of the public, the individual members of the community cannot sue for an

advantage lost, unless the benefit to them was primary and immediate in such a sense and to such a degree as to indicate the assumption of a duty on the part of the company to make such reparation directly to the individual citizen.

In *Smith* v. *Great South Bay Water Co.* (82 App. Div. 427) a taxpayer, whose buildings were destroyed by fire because of the failure of the defendant water company to keep its fire hydrants in good working order, and to have a sufficient head of water with which to extinguish fires, was denied a recovery, notwithstanding the fact that the contract between the defendant and the municipality provided that the water company would assume and pay all damage sustained, and all judgments recovered against the town, by reason of the company's negligence in constructing, operating or repairing its plant.

In *Wainwright* v. *Queens County Water Co.* (78 Hun, 146) plaintiff was a taxpayer in a fire district in the unincorporated village of Rockaway Beach. The district had contracted with the defendant for a supply of water to be maintained at all times at a certain specified pressure. Plaintiff's buildings were destroyed by fire because the defendant breached its agreement. The complaint contained an allegation that the contract was made for the benefit of the plaintiff, as well as that of the residents and taxpayers of the district. It was held that this allegation was not one of fact, which would be admitted by the demurrer, but was only the pleader's conclusion as to the effect of the agreement, and that, in order to entitle the plaintiff to recover against the water company, there must exist a privity of contract between the parties to the action, and that such privity could only be spelled out where a third party was specifically named in the agreement, or where the promisor received money or property which he agreed to pay over to a third person who, by adopting the contract, became a beneficiary thereunder, or where the promisee was under a legal obligation to third persons which the promisor assumed as his own.

In *German Alliance Ins. Co.* v. *Home Water Supply Co.* (226 U. S. 220) it was held that a taxpayer had no such direct interest in an agreement between a municipality and a corporation for a supply of water for fire protection as would allow him to sue either *ex contractu* for breach, or *ex delicto* for violation of the public duty thereby assumed.

In *Ultramares Corp.* v. *Touche* (255 N. Y. 170) the defendants, a firm of public accountants, were employed by Fred Stern & Co., Inc., to prepare and certify a balance sheet, setting forth the condition of its business as of December 1, 1923. The sheet which the defendants certified showed the net worth of Stern & Co. to be

$1,070,715.26, when in reality the concern was bankrupt. Upon the strength of this balance sheet, and the certificate of the defendants, plaintiff loaned to Stern & Co. large sums of money, which were never repaid. Plaintiff then sued the public accountants in tort upon two causes of action: (1) For misrepresentations which were merely negligent; (2) for representations charged to have been fraudulently made. The court held that any liability based on the theory of negligence must be confined to the contract itself, and could only be enforced by the parties to the agreement, and dismissed that part of plaintiff's complaint.

In *Jaillet* v. *Cashman* (115 Misc. 383; affd., 202 App. Div. 805; affd., 235 N. Y. 511) it was held that an action would not lie against an association, engaged in the business of supplying its subscribers with current news by a ticker service, in favor of a member of the public, who, upon seeing such a report in a broker's office which turned out to be erroneous, sold his stocks at a loss, because there was no privity between the plaintiff and the defendant, the former being but one of the public to whom all news was liable to be disseminated.

In *Glawatz* v. *People's Guaranty Search Co.* (49 App. Div. 465) it was held that a certificate attached to an abstract of title, by which the defendant certified to the owner of certain premises, at whose request the search was made, and to his heirs, devisees and grantees, that all matters affecting the title to the premises were set forth in the abstract, did not entitle a subsequent grantee of the premises to whom the abstract had been delivered to recover from the searching company the damages which it sustained by reason of the fact that the abstract erroneously stated the amount of a mortgage covering the property. The plaintiff was not a party to the contract with the defendant, and it was held that he could only recover if he showed (1) an intent upon the part of the promisee to secure the right or benefit claimed, (2) some privity between the promisee and the party benefited, and some duty owing from the former to the latter which would create a legal or equitable claim to the benefit of the promisee.

In the recent case of *Cole* v. *Vincent* (229 App. Div. 520) the plaintiff, Bessie V. Cole, purchased a farm in Oswego county through Henry L. Cole, a real estate agent. The agent ordered from the Oswego Abstract Company a search upon the property. The company failed to note a certain judgment which was a lien against the property. In an action against the abstract company and others, this court, speaking through its presiding justice, held that the plaintiff had no cause of action against the abstract company, because she was not a beneficiary of the contract between that

company and Henry L. Cole, nor had she brought herself within any of the classes to which the familiar rule of *Lawrence* v. *Fox* and *Seaver* v. *Ransom* were applicable.

In *Savings Bank* v. *Ward* (100 U. S. 195) the owner of property employed the defendant to search the title. Defendant was negligent in his work, and the search was inaccurate. Plaintiff made a loan on the property, relying upon the correctness of the abstract. In an action brought by the plaintiff to recover from the searcher the damages which the former sustained by reason of the latter's defective work, it was held that no recovery could be had, because there was no contractual relation between the parties to the action.

I have not overlooked the case of *Wilson* v. *Costich Co., Inc.* (231 App. Div. 346; affd., 256 N. Y. 629) where this court permitted the owners of real property, situated in the city of Rochester just over the line which separated that municipality from the town of Brighton, to recover the damages occasioned to their property, by reason of the negligent manner in which the defendant contractor performed its work in laying a sewer in the town of Brighton under a contract which it had with Brighton Sewer District No. 4. In that case the contract provided that the defendant should be responsible for " all acts of its agents, servants and employees, and for all damages caused through negligence," and the defendant agreed to indemnify the sewer district, and to save it harmless against all suits resulting from the manner in which it did its work. The contract also contained a provision that, " in case any injury is done along the line of the work in consequence of any act or omission on the part of the contractor, or his employees or agents, in carrying out any of the provisions or requirements of this contract, the contractor shall make such repairs as are necessary in consequence thereof." The public along the line of the work were specifically made beneficiaries under the contract, if they suffered damage by reason of defendant's neglect. The intent of the parties was clear. That is a far different situation from that which we have in the case now before us.

Plaintiff relies largely upon the authority of *Glanzer* v. *Shepard* (233 N. Y. 236), where the plaintiffs were permitted to recover for failure of the defendants to live up to their contract obligations, although the plaintiffs were not parties to the agreement. In that case the defendants, who were public weighers, had been requested by the sellers of 905 bags of beans to weigh the merchandise, and to furnish the plaintiffs with a copy of the return. Plaintiffs bought the beans, and paid for them, on the strength of the certificate which was later found to be untrue. The actual

weight was many pounds less than that stated in the return. The defendants were told that the beans had been sold, and that payment would be made in accordance with the certificate, and they sent a copy of the return to the plaintiffs for the very purpose of having them act upon it. Plaintiffs were in the picture from start to finish, and the defendants knew that what they did was for plaintiffs' benefit, and would be relied upon by them. All this created a connection between the plaintiffs and the defendants, which does not exist in the instant case. The decision in *Ultramares Corp.* v. *Touche* (255 N. Y. 170), did not follow the rule laid down in the *Glanzer* case. The distinction in the two actions was pointed out by Chief Judge CARDOZO in his opinion in the *Ultramares Case* (at p. 182), where he calls attention to the fact that in the *Glanzer* case the delivery of the certificate to the plaintiffs was not merely one possibility among many which might have occurred, but that it was the " end and aim of the transaction," and was as certain to follow and was as deliberately willed as if a telegraph company, contracting with the sender of a message, were to send it wrongly to the damage of the one who was expected to receive it. The same distinction is present here. The ruling in the *Glanzer* case must be confined to the facts of that particular case.

Neither do I see how *Doyle* v. *Chatham & Phenix National Bank* (253 N. Y. 369) nor *International Products Co.* v. *Erie Railroad Co.* (244 id. 331) sustain plaintiff's contention. In the *Doyle* case the very bonds which defendant certified as authentic required defendant's certificate in order to become valid instruments; it was defendant's own act which contributed to the creation of the obligation. In the *International Products Company* case the negligent language complained of was addressed directly to the plaintiff, and not to a third party.

While I recognize that the law is progressive, and that the zone of liability against those causing injury to others is gradually extending, and wisely so, I think that, if we were to permit the plaintiff to recover here, we would extend the rule of liability beyond all reasonable limits, and that the great weight of authority is against such contention. The rule of *damnum absque injuria* is firmly imbedded in our jurisprudence. There are many cases of injury where the resulting damages must be borne by the injured party, without redress from him who caused the damage. Unfortunately for the plaintiff, I fear that this is another case of *damnum absque injuria*.

Having reached the conclusion that the complaint does not state facts sufficient to constitute a cause of action, it necessarily follows

that the order appealed from should be reversed, and that the motion to dismiss the complaint should be granted.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Order reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.