Dorothea MacKown, Appellant, v. Illinois Publishing and Printing Company, Appellee.

Gen. No. 39,168.

Opinion filed February 15, 1937.

THEODORE S. ROSENFIELD, LEE A. FREEMAN and HAROLD S. IGLOW, all of Chicago, for appellant.

EDWARD G. WOODS, of Chicago, for appellee; KURT J. SALOMON, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit to recover damages claimed to have been sustained by her as a result of using a preparation recommended in an article written by one of its agents and printed in defendant's newspaper, to eradicate "Dandruff Woes" with which she was troubled. Her amended statement of claim was stricken on motion of defendant on the ground that it did not state a cause of action. The suit was dismissed and plaintiff appeals.

The allegations of the amended complaint in substance are that defendant publishes and circulates a newspaper and its issue of May 9, 1936, contained an article written by one of its agents. The article is set up verbatim and is as follows:

"EFFECTIVE REMEDY FOR DANDRUFF WOES

Proves Its Values in Doctors' Tests

by
Josephine Huddleston.

DANDRUFF is infectious.

"To clear the scalp of these tiny flakes of dandruff, a drug called resorcin has proved an effective remedy. It is the drug favored in most doctor's prescriptions for dandruff.

"The formula given below should be filled at the drug store by a registered pharmacist, and not compounded at home. This tonic is not only reliable, it is scientific, having been given to me years ago by a reputable doctor for my own use.

"SINCE THAT TIME, hundreds of my readers have written to thank me for sending it to them.

"The formula is as follows:

RESORCIN . . . . . . . . . . . . . . . . . . . . . . . . . .20 grains
BICHLORIDE OF MERCURY . . . . . . . . . . . .2 grains
ALCOHOL . . . . . . . . . . . . . . . . . . . . . . . .50 per cent

Made into four (4) ounces liquid.

"This tonic should be applied to the scalp daily after a five-minute massage to invigorate the sluggish ducts throughout the scalp.

. . . . . .

"Part the Hair, apply a little tonic, then make a second part and apply the tonic. Continue in this fashion until the entire scalp has been covered.

"Repeat daily for one week before shampooing the hair.

"When Shampooing, use the following method:

"To one pint of cold water, add one bar of medicated soap, which has been cut up so it will melt quickly. Let this simmer over a slow fire until all soap has been melted. When cold the shampoo will be in jelly form.

"Shampoo the hair thoroughly and rinse it thoroughly. Dry it in the sun if you can.

"Repeat the treatment for a second week. Then dispense with the use of the tonic for one week. Examine the scalp daily during this rest period. At the first indication of dandruff returning, resume the tonic applications at once.

"Follow this plan until the scalp remains clear from dandruff for one week with the use of the tonic."

It is alleged that plaintiff purchased a copy of defendant's newspaper, read the article and had the formula filled by a druggist; that she was ignorant of the fact that the formula contained harmful ingredients; that defendant "carelessly, negligently and wrongfully" offered a remedy, the elements of which it knew, or by the exercise of proper care should have known were harmful, injurious and dangerous to one using it as directed; that plaintiff used the remedy and as a result thereof "was caused to suffer severe and permanent injuries and ailments both externally and internally," etc.

Counsel for plaintiff, in support of her contention that the amended statement of claim states a cause of action, cite *McAndrews v. C. L. S. & E. Ry. Co.,* 222 Ill. 232; *Liebold v. Green,* 69 Ill. App. 527; *National Iron v. Hunt,* 192 Ill. App. 215; *People v. Kane,* 205 Ill. App.

32; *Shoninger Co. v. Mann,* 219 Ill. 242; *Pennsylvania Co. v. Backes,* 133 Ill. 255; *Creedon v. Automatic Voting Machine Corp.,* 276 N. Y. Supp. 609.

In the *McAndrews* case the plaintiff, an employee of the Illinois Steel Company, brought an action to recover damages for personal injuries against a railroad company for negligently causing one of its locomotive engines to collide with a freight car plaintiff was unloading, as a result of which he was injured. Counsel cite this case because it states the three elements which must unite to constitute actionable negligence.

The *Liebold* case, 69 Ill. App. 527, was a suit to recover damages for personal injuries brought by a servant against his master on the ground that the master failed to provide the servant with a safe place in which to do his work, and negligently directed him to do his work in such a manner that he was injured. It was held that the declaration stated a cause of action. We think it obvious that neither of these two cases throws any light on the question before us for decision.

In the *Hunt* case (192 Ill. App. 215), plaintiff purchased certain materials in reliance upon a certificate of test and examination made by defendants who were expert in that line. Such certificates were generally recognized by the trade as fixing the character and value of the materials tested. The materials were much inferior to what the certificates stated, and it was held that plaintiff was entitled to recover from the experts damages sustained although it purchased the materials from another. The court there said (p. 219): "It is apparent that there is no privity of contract between plaintiff and defendants, and were there no exception to the general rule that where there is no privity there is no duty, there would of course be no breach with ensuing liability. But there is an exception to this general rule, which seems to be this, that where a person undertakes to do an act or discharge a

duty by which the conduct of another may be properly regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of his negligence." In that case the certificates were issued by experts in that line, and were made for the use and benefit and at the request of the users and dealers in material inspected and were relied upon by the plaintiff when he purchased the material, while in the instant case the article which is the basis of the suit does not purport to be written by a physician who would be considered an expert, but by one who did not purport to be an expert because she states in the article that the formula had been given to her "years ago by a reputable doctor" for her own use, and that since that time hundreds of her readers have written to thank her for sending it to them.

*People v. Kane,* 205 Ill. App. 32, was an action brought by the People to recover fines and penalties on the ground that defendant was practicing medicine without a license, contrary to the statute. In that case the defendant advertised and professed to diagnose diseases and heal persons, and it was held that he was practicing medicine within the meaning of the statute; while in the case at bar the person writing the article is passing on to her readers a formula given to her by a physician.

In the *Mann* case (219 Ill. 242) it was held that a landlord who rents different parts of his building to several tenants, reserving the elevators, halls, etc., for the common use of his tenants, is under an implied duty to use reasonable care to keep them in safe condition, and that he is liable for injuries to persons lawfully in the building which result from his failure to perform his duty.

The *Backes* case (133 Ill. 255) involved the doctrine of master and servant. We think it clear that the last two cases are not in point.

The *Creedon* case (276 N. Y. S. 609) was a suit brought by Creedon who was a candidate for assessor, against the voting machine company which set up voting machines to be used in the election, alleging that the machine company had not properly set up its machines so that the votes were not properly recorded, as a result of which the canvass of the votes showed other parties elected when it should have shown that plaintiff was elected; that plaintiff was obliged to resort to court and was put to expense which he sought to recover. It was held that the complaint stated no cause of action. Counsel cite this case and quote from it the following (p. 611): ''It is undoubtedly true that a person may owe two separate and distinct obligations in respect to the same thing, one of a personal nature to a particular individual growing out of a peculiar relation to him; the other of a general character to those who would necessarily be exposed to risks or danger through the negligent discharge of such duty.'' In that case the court reviewed a great many authorities, among which is *Jaillet v. Cashman,* 115 Misc. 383, and said (p. 615): ''In *Jaillet v. Cashman,* 115 Misc. 383, 189 N. Y. S. 743, affirmed in Id. 202 App. Div. 805, 194 N. Y. S. 947, and in Id., 235 N. Y. 511, 139 N. E. 714, it was held that an action would not lie against an association engaged in the business of supplying its subscribers with current news by a ticker service, in favor of a member of the public who, upon seeing such a report in a broker's office, which turned out to be erroneous, sold his stocks at a loss, because there was no privity between the plaintiff and the defendant; the former being but one of the public to whom all news was liable to be disseminated.''

In *McNevins v. Lowe,* 40 Ill. 209, cited by defendant, a patient brought suit against a physician and surgeon to recover damages for malpractice. He had a judgment which was reversed by the Supreme Court on account of a faulty instruction. The court there said (p. 210): "If a person holds himself out to the public as a physician he must be held to ordinary care and skill in every case of which he assumes the charge, whether in the particular case he has received fees or not. But if he does not profess to be a physician nor to practice as such, and is merely asked his advice as a friend or neighbor, he does not incur any professional responsibility."

In the instant case the person writing the article in question did "not profess to be a physician," but merely told her readers what her doctor had theretofore done for her in curing her of dandruff.

In *Higgins v. McCabe,* 126 Mass. 13, plaintiff engaged the defendant, a midwife, practicing in Boston, to deliver plaintiff's child. While attending the baby it was discovered that its eyes were infected; the midwife said she had an effective remedy and that it was not necessary to call a doctor. Afterward the baby's eyes became worse and a physician was summoned, but the baby lost the sight of both eyes. Suit was brought on behalf of the child. There was a directed verdict for the defendant, which on appeal was affirmed. The court said (p. 19): "The defendant was a midwife; the jury would not be justified in finding that she claimed to possess, or might reasonably be expected from her calling to have, the peculiar knowledge, skill, and experience of an expert in such matters. The representations of the defendant, that she could cure the child with simple remedies and washes, that she had cured other children in the same way who were similarly afflicted, and that there was no need of a doctor, were but the expression of an opinion as to

the efficacy of her remedies, and did not imply that she undertook to use that higher skill of the medical profession which is required in the treatment of the more complicated and delicate organs. The question was whether she had discharged the duty which she assumed with that skill which she professed to have, and with that diligence which might reasonably have been expected of her. Upon that question, the fact that the service was rendered without compensation must have an important, if not decisive, bearing. . . . A physician must apply the skill and learning which belong to his profession; but a person who, without special qualifications, volunteers to attend the sick, can at most be only required to exercise the skill and diligence usually bestowed by persons of like qualifications under like circumstances. To hold otherwise would be to charge responsibility in damages upon all who make mistakes in the performance of kindly offices for the sick.''

So, in the instant case, the person writing the article purported to pass along to the reading public the formula she had obtained from a reputable physician and which she said had benefited her and many others. There is no allegation, nor is there any contention, that the article did not speak the truth. Plaintiff may have been allergic to this remedy.

In *Jaillet v. Cashman*, 189 N. Y. S. 143 (115 Misc. 383), affirmed by the Appellate Division and by the Court of Appeals of New York, as appears from the *Creedon* case above quoted from, an association engaged in the business of supplying to its subscribers current news known as a ticker service, incorrectly reported the effect of a decision of the United States Supreme Court, which report the plaintiff saw on the ticker in a broker's office, and in reliance thereon sold stock, it was held that the plaintiff could not recover losses he thereby sustained. The court there said (p. 744): ''There is moral obligation upon every one

to say nothing that is not true, but the law does not attempt to impose liability for a violation of that duty unless it constitutes a breach of contract obligation or trust, or amounts to a deceit, libel or slander. Theoretically a different rule might be logically adopted, but as a matter of practical expediency such a doctrine seems absolutely necessary. There is no privity between this plaintiff and the defendant. He is but one of a public to whom all news is liable to be disseminated. His action can be sustained only in case there was a liability by the defendant to every member of the community who was misled by the incorrect report. There was no contract or fiduciary relationship between the parties, and it is not claimed that the mistake in the report was intentional." As above stated, this rule was approved by the highest court of New York.

In *Courteen Seed Co. v. Hong Hong & S. B. Co.,* 245 N. Y. 377, it was held that a bank which had agreed to value through its branch bank in a foreign country a credit in favor of plaintiff's agent, established by a letter of credit issued by another bank, is guilty of no breach of duty to plaintiff in buying from the agent, after the expiration of the letter of credit, a draft purporting on its face to be drawn on the letter of credit, because in doing so the bank does not act as agent of the drawee, but at its own risk, and owes no duty to the drawee or to its customer. Judge Pound in delivering the opinion of the court said (p. 381): "The court has had to deal recently with cases involving liability for information negligently given. They all rest on the principle that negligent words are not actionable unless they are uttered directly, with knowledge or notice that they will be acted on, to one to whom the speaker is bound by some relation of duty, arising out of public calling, contract or otherwise, to act with care if he acts at all." This statement

was quoted with approval by Chief Judge Cardozo in *Ultramares Corp. v. Touche,* 255 N. Y. 170, where the court also approved the rule announced in the *Jaillet* case. It is there said (p. 185): ''The antidote to these decisions and to the overuse of the doctrine of liability for negligent misstatement may be found in *Jaillet v. Cashman,* (235 N. Y. 511 and *Courteen Seed Co. v. Hong Kong & Shanghai Banking P. Corp.,* (245 N. Y. 377). In the first of these cases the defendant supplying ticker service to brokers, was held not liable in damages to one of the broker's customers for the consequences of reliance upon a report negligently published on the ticker. If liability had been upheld, the step would have been a short one to the declaration of a like liability on the part of proprietors of newspapers.'' The court continuing quoted from the opinion of Judge Pound from which we have above quoted.

Under the doctrine announced by Chief Judge Cardozo, we think that the defendant newspaper in the instant case is not liable.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.