342 So.2d 1053 (1977)
Ingrid CARDOZO and Joseph Cardozo, Her Husband, Plaintiffs,
v.
Norma TRUE a/K/a Norma A. True and Ellie's Book and Stationery, Inc., Defendants.
No. 76-1623.
District Court of Appeal of Florida, Second District.
February 23, 1977.
Rehearing Denied March 24, 1977.
*1054 John Patterson of Livingston & Patterson, and James W. Cullis of Icard, Merrill, Cullis, Timm & Furen, Sarasota, for plaintiffs.
Andrew D. Owens, Jr. of Dart, Dickinson, O'Riorden, Gibbons & Quale, Sarasota, for defendant Ellie's Book and Stationery, Inc.
SCHEB, Judge.
The Circuit Court for Sarasota County certified the following questions to this court pursuant to Fla.App. Rule 4.6(a):
I. IS A RETAIL BOOK DEALER LIABLE UNDER SECTION 672.314, FLORIDA STATUTES, TO A PURCHASER OF A COOKBOOK FOR HER INJURIES AND DAMAGES CAUSED BY IMPROPER INSTRUCTIONS OR LACK OF ADEQUATE WARNINGS AS TO POISONOUS INGREDIENTS USED IN A RECIPE?
II. IS A RETAIL BOOK DEALER LIABLE UNDER THE COMMON LAW OF IMPLIED WARRANTIES TO A PURCHASER OF A COOKBOOK FOR HER INJURIES FOR LACK OF ADEQUATE WARNINGS AS TO POISONOUS INGREDIENTS USED IN A RECIPE?
The plaintiffs' amended complaint set forth the essential facts which the trial court has summarized as follows:
"Norma True authored a book entitled `Trade Winds Cookery', an anthology of recipes selected and prepared by her using tropical fruits and vegetables. It was published by a Virginia corporation, which sold the book to Ellie's Book and Stationery, Inc. Ellie's was and is a retail book dealer located in Sarasota, Florida.
On September 15, 1971, Ingrid Cardozo purchased a copy of `Trade Winds Cookery' from Ellie's. Four days later, Mrs. Cardozo was using the book and following a recipe in it for the preparation and cooking of the Dasheen plant, commonly known as `elephant's ears'. While preparing the roots for cooking, she ate a small slice and immediately experienced a burning of the lips, mouth, throat and tongue, coughing and gasping, and intense stomach cramps. This persisted over several days, despite medical care.
Defendant True did not answer plaintiff's complaint, and is not involved in this certificate. As to defendant Ellie's Mrs. Cardozo and her husband alleged that the book did not have adequate instructions; that it failed to warn that uncooked Dasheen roots are poisonous; and that the ingredients contained in the recipes for Dasheen plant dishes were inadequately tested to insure their safety *1055 for human consumption. It was further alleged that Ellie's impliedly warranted that the book was reasonably fit for its intended use, and that it was not, due to inadequate instructions and warning. Finally, it was alleged that Mrs. Cardozo's injuries and Mr. Cardozo's derivative claim were proximately caused by the breach of this warranty."
It appears to us that our answer will be dispositive of the case as to the claim against Ellie's. See Fla.App. Rule 4.6(a). Of course, our answers do not bear on the plaintiffs' action against the defendant, True.
Plaintiffs argue that the first question is controlled by the Uniform Commercial Code (U.C.C.), Section 672.314, Florida Statutes; that the second question is answered by the common law of implied warranties. Section 672.314, Florida Statutes provides:
(1) Unless excluded or modified (§ 672.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as:
(a) Pass without objection in the trade under the contract description; and
(b) In the case of fungible goods, are of fair average quality within the description; and
(c) Are fit for the ordinary purposes for which such goods are used; and
(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) Are adequately contained, packaged, and labeled as the agreement may require; and
(f) Conform to the promises or affirmations of fact made on the container or label if any.
(3) Unless excluded or modified (§ 672.316) other implied warranties may arise from course of dealing or usage of trade.
Plaintiffs see the quoted statute as one of general applicability to all retail dealers in consumer goods. They point out that this section of the U.C.C. creates a statutory implied warranty of merchantability imposed by law on the merchant who regularly sells goods and that defendant Ellie's falls in that category in respect to the sale of books. And, while plaintiffs find no decisional law to directly support their contention that Ellie's is liable, the applicability of the statute, they maintain, is obvious from its plain meaning.
Defendant, while recognizing that Ellie's may be subject to the doctrine of implied warranty now imposed by the U.C.C., claims such warranty is limited to the physical characteristics of the books they sell and cannot be construed to include the thought processes conveyed by the author and produced in writing by the publishers of that book. They urge the practical impossibility of book sellers testing every recipe in the books they sell. Moreover, they contend that if such a burden were to be imposed upon the book seller, then the merchant would have to be an expert or retain an expert in every field embraced by the numerous publications they offer. Ultimately, they argue, this would mean the stores which now disseminate information would be forced to close with the resultant infringement on freedom of speech and expression.
The definition of "goods" under the U.C.C. is sufficiently broad to include books. Section 672.105, Florida Statutes. Cf. Lake Wales Publishing Co. v. Florida Visitor, 335 So.2d 335 (Fla.App.2d DCA 1976), holding printed pamphlets as goods under U.C.C. Clearly, the defendant Ellie's qualifies as a merchant with respect to books. Section 672.314(1), Florida Statutes.
Thus, we approach the novel question of not whether Ellie's impliedly warranted the recipe book it sold to Mrs. Cardozo, but rather, the scope of that warranty. From reading Section 672.314(2), the requirement of merchantability most relevant here is (c), *1056 which requires goods to be "fit for the ordinary purposes for which such goods are used."
As we have observed, books are goods. As such Ellie's is held to have impliedly warranted the tangible, physical properties; i.e., printing and binding of books. But, at this point it becomes necessary to distinguish between the tangible properties of these goods and the thoughts and ideas conveyed thereby. The principle involved is not directly controlled by any precedent of the decisional law, either under the doctrine of implied warranty under common law or as codified under the U.C.C. It is unthinkable that standards imposed on the quality of goods sold by a merchant would require that merchant, who is a book seller, to evaluate the thought processes of the many authors and publishers of the hundreds and often thousands of books which the merchant offers for sale. One can readily imagine the extent of potential litigation. Is the newsdealer, or for that matter the neighborhood news carrier, liable if the local paper's recipes call for inedible ingredients? We think not.
While not directly in point, it is interesting to note that even publishers have not been held liable where injuries have occurred through use of products advertised in their magazines. Thus, in Yuhas v. Mudge, 129 N.J. Super. 207, 322 A.2d 824 (1974), the court said that Popular Mechanics Corp. could not be held liable to a plaintiff injured by fireworks resulting from an allegedly defective product advertised in the corporation's magazine. The court pointed out that the magazine had neither endorsed the product or secured any direct pecuniary benefit from the sale of the fireworks. To impose that legal duty upon the publisher, the court said, would have a staggering adverse effect upon the commercial world and our economic system. More closely in point is pre-U.C.C. case, Mac Kown v. Ill. Publishing & Printing Co., 289 Ill. App. 59, 6 N.E.2d 526 (1937), where the court refused to hold a newspaper liable for injuries to one of its readers allegedly resulting from the reader's use of a dandruff remedy recommended as one given to the writer of the article by a reputable physician. The principles of law and considerations of public policy which support denial of liability of a publisher in these instances more urgently mandates denial of liability of a newsdealer.
Closely analogous is the principle that distributors of newspapers and periodicals cannot be even held legally responsible for defamatory material contained therein where the dealer did not know and reasonably could not have known that the publication contained defamatory material. See 50 Am.Jur.2d, Libel and Slander, Section 342. Thus in Sexton v. American News Co., 133 F. Supp. 591 (N.D.Fla. 1955), the court stated that since:
"... no duty rested definitely on defendant to familiarize itself with the contents of the publication in question and thereby learn of the allegedly libelous matter about the plaintiff, there remains nothing for the court to do in this case but grant defendant's motion for summary judgment."
The Supreme Court of Florida has held that even a newspaper publisher is not liable for the mere reproduction of outside press dispatches from generally recognized sources of daily news. Layne v. Tribune Co., 108 Fla. 177, 146 So. 234 (1933).
Thus liability without fault, which may be present in an action for breach of implied warranty, has long been held inappropriate in an action against one passing on printed words without an opportunity to investigate them. The principle against imposing liability without fault on a publisher in a defamation action has recently been given constitutional status. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); Time Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).
The common theme running through these decisions is that ideas hold a privileged position in our society. They are not equivalent to commercial products. Those who are in the business of distributing the ideas of other people perform a unique and *1057 essential function. To hold those who perform this essential function liable, regardless of fault, when an injury results would severely restrict the flow of the ideas they distribute. We think that holding Ellie's liable under the doctrine of implied warranty would, based upon the facts as certified to us, have the effect of imposing a liability without fault not intended by the Uniform Commercial Code.
The reasoning applicable to our response to the first question must also conclude the answer to the second. The U.C.C. in codifying the law of sales did nothing to restrict the common law doctrine of implied warranty under Florida law. To the contrary, the code raised the dignity of the doctrine to statute and made it a certainty that warranties would be implied in accordance with the statutory design where the seller is a merchant with respect to goods of that particular kind being sold.
We make no statements concerning the liability of an author or publisher under the facts as certified to us. Nor do we pass upon the question of whether Ellie's could be held liable if it actually knew the book it sold contained recipes with poisonous ingredients. Rather, we hold that absent allegations that a book seller knew that there was reason to warn the public as to contents of a book, the implied warranty in respect to sale of books by a merchant who regularly sells them is limited to a warranty of the physical properties of such books and does not extend to the material communicated by the book's author or publisher.
Accordingly, we answer each of the questions certified in the negative and remand this cause for further proceedings consistent with this opinion.
BOARDMAN, C.J., and HOBSON, J., concur.