WILLIAM ALM, Plaintiff-Appellant, v. VAN NOSTRAND REINHOLD COMPANY, INC., Defendant-Appellee (Alexander G. Weygers, Defendant).

First District (5th Division) No. 83—2365

Opinion filed June 28, 1985.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan and John P. Prusik, of counsel), for appellant.

Ross & Hardies, of Chicago (Barbara Ross, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from the dismissal of his amended complaint as against defendant, Van Nostrand Reinhold Company, Inc. On appeal,

plaintiff contends that a publisher of a "How To" book has a duty to provide adequate and safe instructions and warnings to intended purchasers and users of its publications. We affirm.

The Making of Tools was written by Alexander Weygers (Weygers), published by Van Nostrand Reinhold Company, Inc. (defendant), and sold to plaintiff by Kroch's and Brentano's. On March 23, 1980, plaintiff was injured when a tool shattered while he was allegedly following the instructions in the book for making that tool.

On January 10, 1983, plaintiff filed the amended complaint which is at issue here, sounding in negligence against both author and publisher. With respect to the defendant publisher, plaintiff's amended complaint alleged, *inter alia*, that defendant was in the business of manufacturing, publishing and selling books, including "How To" books such as The Making of Tools; that the book was published by defendant; that it was intended to be used by the novice craftsman in woodcarving or in making tools associated with woodcarving; that defendant knew or should have known the dangers present in the processes of woodcarving and toolmaking recommended in the book; that defendant knew or should have known that the book would be used by novice craftsmen who would rely on the instructions in the book; that defendant therefore had a duty to provide adequate instructions and warnings to alert craftsmen of the dangers present in the woodcarving and toolmaking process; and that defendant breached this duty. Finally, plaintiff alleged that he was following instructions in The Making of Tools when, as a result of defendant's negligence, the tool shattered and caused him injury.

On May 23, 1983, the trial court heard defendant's motion to dismiss plaintiff's amended complaint. The court dismissed plaintiff's complaint as to defendant, ruling that there is no duty on the part of a publisher to verify the material it publishes. Plaintiff's case continues as against author Weygers. The court found no just reason to delay plaintiff's appeal on this count of the complaint, and plaintiff filed a timely notice of appeal.

OPINION

The parties agree that whether the allegations in plaintiff's amended complaint set forth a cognizable claim is essentially a question of law.

Plaintiff argues that the publisher of a "How To" book has a duty to provide adequate and safe instructions and warnings to intended purchasers and users of its publications. In support of his argument, plaintiff urges this court to adopt section 311 of the Restatement

(Second) of Torts, so as to impose a duty to provide safe and adequate instructions upon defendant. Although plaintiff acknowledges that section 311 has yet to be recognized as a basis for his theory of negligent misrepresentation of information, he urges that its adoption is long overdue.

Conversely, defendant argues that the law does not and should not impose a duty upon a publisher to warn the reading public as to the content of an author's text. Defendant posits that the Illinois Appellate Court has already stated a publisher is not liable for physical injuries resulting from the procedures it publishes (see *MacKown v. Illinois Publishing & Printing Co.* (1937), 289 Ill. App. 59, 6 N.E.2d 526), and that other jurisdictions have also refused to acknowledge such a duty. In addition, defendant states that the imposition of such a duty would have a chilling effect on the free expression of thoughts and ideas which is entitled to first amendment protection.

■ Common law negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307; Prosser, Torts sec. 30, at 143 (4th ed. 1971).) The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538; Prosser, Torts sec. 37, at 206 (4th ed. 1971).) It is important to recognize that the imposition of a duty is an exercise of judicial policy-making. (See *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307; Prosser, Torts sec. 53, at 325-26 (4th ed. 1971).) "In determining whether the law imposes a duty, foreseeability of possible harm alone is not the test, for in retrospect almost every occurrence may appear to be foreseeable. The likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant must be taken into account." *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535.

Such considerations led our appellate court in *MacKown v. Illinois Publishing & Printing Co.* (1937), 289 Ill. App. 59, 6 N.E.2d 526, to refuse to hold a newspaper liable for injuries to one of its readers allegedly resulting from the use of a dandruff remedy recommended in an article. The *MacKown* court dismissed the reader's claim and found that the newspaper owed no duty to the plaintiff, relying in part on a series of New York cases in which the lack of privity between the plaintiff and the defendant was held to bar a cause of action for "information negligently given." (*MacKown v. Illinois Pub-*

*lishing & Printing Co.* (1937), 289 Ill. App. 59, 67; see *Jaillet v. Cashman* (1921), 115 Misc. 383, 189 N.Y.S. 743, *aff'd* (1923), 235 N.Y. 511, 139 N.E. 714 (ticker service not liable to nonsubscriber plaintiff who saw an erroneous report in broker's office and relied on report to sell stock); *Ultamares Corp. v. Touche* (1931), 255 N.Y. 170, 174, N.E. 441 (accountant not liable to third party who relied on balance sheet to loan money to company which later defaulted).) Plaintiff correctly notes that the doctrine of privity, by itself, no longer shields tort-feasors from the consequences of negligent conduct. (See *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 84, 199 N.E.2d 769.) What does remain as a factor is the concern behind the privity requirement, that the duty imposed not constitute an unduly severe burden upon a defendant. *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 66, 250 N.E.2d 656, 662; *Demuth Development Corp. v. Merck & Co.* (E.D. N.Y. 1977), 432 F. Supp. 990, 993-94.

The Illinois appellate court in *MacKown* in effect determined that as a matter of policy it would not impose upon a newspaper the duty of protecting its readers from articles containing instruction that might cause injury if followed. Courts in other jurisdictions have reached similar conclusions. Thus, in *Yuhas v. Mudge* (1974), 129 N.J. Super. 207, 322 A.2d 824, plaintiff sustained personal injuries in an explosion of fireworks purchased by a third party who responded to an advertisement in Popular Mechanics magazine. The court found no actionable duty to investigate these products on the part of the magazine publisher, stating:

> "To impose the suggested broad legal duty upon publishers of nationally circulated magazines, newspapers and other publications, would not only be impractical and unrealistic, but would have a staggering adverse effect on the commercial world and our economic system. For the law to permit such exposure to those in the publishing business who in good faith accept paid advertisements for a myriad of products would open the doors 'to a liability in an indeterminate amount for an indeterminate time to an indeterminate class.' [Citation.]" (*Yuhas v. Mudge* (1974), 129 N.J. Super. 207, 209-10, 322 A.2d 824, 825; accord, *Suarez v. Underwood* (1980), 103 Misc. 2d 445, 426 N.Y.S.2d 208.)

Concerns about the devastating effects of imposing such broad liability were cited by the court in *Cardozo v. True* (Fla. App. 1977), 342 So. 2d 1053, which held that a book dealer would not be held liable under a warranty theory where the purchaser of a cookbook was poisoned as a result of an alleged failure to warn.

Plaintiffs concede that they have discovered no case in any jurisdiction which has imposed liability on a publisher for negligent misrepresentation merely because of the publication of material written by a third party. In *Hanberry v. Hearst Corp.* (1969), 276 Cal. App. 2d 680, 81 Cal. Rptr. 519, the court recognized a cause of action for negligent misrepresentation against a publishing company which had affirmatively represented in its magazine that certain shoes had "Good Housekeeping's Consumers' Guaranty Seal," and had certified that the product was a good one. The plaintiff purchased a pair of the shoes and was injured when she slipped on a vinyl floor, allegedly because the shoes were defective. In allowing the complaint the court specifically relied on the defendant's endorsements of the product which were contained not only in its own magazine but in other advertising media. No such specific endorsement of a product is at issue here, merely the act of publishing another's work.

Plaintiff seeks to rely on section 311 of the Restatement (Second) of Torts (1965), which provides:

"Negligent Misrepresentation Involving Risk of Physical Harm

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the manner in which it is communicated."

Comment to that section broadly states that:

"The rule *** extends to any person who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person or others may depend upon the accuracy of the information." Restatement (Second) of Torts sec. 311, comment b (1965).

However, nothing in the comment or the illustrations suggests that the rule was intended to apply to publishers of information supplied by third parties, nor have plaintiffs cited any cases so applying the rule. But see McDermott, *Liability for Negligent Dissemination of Product Information: A Proposal for Assuring a More Responsible*

*Writership,* 18 Forum 557 (1983).

 We conclude that no cause of action for negligent misrepresentation should be recognized under the facts of this case. Plaintiff's theory, if adopted, would place upon publishers the duty of scrutinizing and even testing all procedures contained in any of their publications. The scope of liability would extend to an undeterminable number of potential readers. We therefore adhere to the holding of this court in *MacKown v. Illinois Publishing & Printing Co.* (1937), 289 Ill. App. 59, 6 N.E.2d 526, and affirm the dismissal of plaintiff's complaint as to the defendant publisher.

In addition, we note that a number of courts have declined, on first amendment grounds, to impose a duty similar to the one urged by plaintiff here. The United States Supreme Court has recognized that the imposition of tort liability for the use of words involves State action which implicates the first and fourteenth amendments. (See *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 265, 11 L. Ed. 2d 686, 697, 84 S. Ct. 710, 718.) Any action which limits free expression must be scrutinized for potential infringement of the public right of free access to ideas as well as the right of publishers to freely disseminate ideas. (See *Columbia Broadcasting System, Inc. v. Democratic National Committee* (1973), 412 U.S. 94, 36 L. Ed. 2d 772, 93 S. Ct. 2080.) Because the parties have argued the issue, we will address it briefly here.

In *Demuth Development Corp. v. Merck & Co.* (E.D. N.Y. 1977), 432 F. Supp. 990, the court declined to impose liability upon the publisher of a chemical encyclopedia for allegedly misrepresenting the toxicity of a chemical used in plaintiff's product. Noting that the rights of society and publishers to "untrammeled dissemination of knowledge" could be limited only as to certain classes of speech (432 F. Supp. 990, 993), the court concluded that liability "would serve neither justice nor the public interest because of its manifestly chilling effect ***." (432 F. Supp. 990, 994.) Similarly, in *Cardozo v. True* (Fla. App. 1977), 342 So. 2d 1053, a Florida court held that a retail book dealer was not responsible for the contents of a cookbook. The court there stated:

> "[I]deas hold a privileged position in our society. They are not equivalent to commercial products. Those who are in the business of distributing the ideas of other people perform a unique and essential function. To hold those who perform this essential function liable, regardless of fault, when an injury results would severely restrict the flow of the ideas they distribute." (342 So. 2d 1053, 1056-57.)

Accord, *DeFilippo v. National Broadcasting Co.* (1982), ___ R.I. ___, 446 A.2d 1036 (first amendment bars cause of action against broadcaster for content of television show).

Plaintiff argues that the first amendment should not shield defendant from liability, and attempts to distinguish bad advice in a "How To" book from "a treatise on politics, religion, philosophy, interpersonal relationships, or the like." We suspect that such a distinction would lead to further first amendment problems involving content-based discrimination. (See *Zamora v. Columbia Broadcasting System* (S.D. Fla. 1979), 480 F. Supp. 199, 206.) More important for our purposes, however, is the chilling effect which liability would have upon publishers, an effect recognized in the cases and not denied by plaintiff. Even if liability could be imposed consistently with the Constitution, we believe that the adverse effect of such liability upon the public's free access to ideas would be too high a price to pay.

For the foregoing reasons, we affirm.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.