**FIRST EQUITY CORPORATION OF FLORIDA, Robert Cornfeld and Floyd Watkins, Plaintiffs,**

v.

**STANDARD & POOR'S CORPORATION, Defendant.**

**No. 86 Civ. 5913.**

United States District Court, S.D. New York.

Sept. 28, 1987.

---

Friedman & Kaplan, New York City, for plaintiffs; Eric Seiler, Andrew W. Goldwater, of counsel.

Cahill Gordon & Reindel, New York City, for defendant; Floyd Abrams, Dean Ringel, Steven Lieberman, of counsel.

## OPINION

GOETTEL, District Judge.

This action arises from an alleged error in the defendant's publication *Corporation Records*. The defendant has moved to dismiss the action for failure to state a claim on which relief can be granted, and for failure to plead fraud with particularity. For the reasons discussed below, the motion is granted in part and denied in part.

*Background*

The defendant Standard & Poor's is a New York corporation which publishes *Corporation Records*. *Corporation Records* contains factual descriptions of the principal terms and provisions of bonds issued by leading corporations. The publi-

cation does not, however, include any investment recommendations by the publisher, nor does it endorse any of the securities it lists.

The defendant touts the reliability of the publication, which is widely recognized. Notwithstanding its reputation and the defendant's marketing efforts, however, there are two indications, besides this lawsuit, that the publication is not free of errors. The first is on the front cover of the index volume, which contains a request from the publisher to subscribers to call to its attention any errors that may occur. In addition, the last page of that volume states: "Information has been obtained from sources believed to be reliable, but its accuracy and completeness, and the opinions based thereon, are not guaranteed."

The error in question here was in Volume 46, No. 11 of *Corporation Records*, which contained a description of convertible secured trust notes issued by Pan American World Airways, Inc. This description allegedly inaccurately reported information contained in the prospectus and indenture as to the circumstances under which accrued interest would be paid in the event the notes were converted.

The plaintiff First Equity Corporation is a Florida investment banking firm which subscribes to *Corporation Records*.[1] Plaintiffs Robert Cornfeld and Floyd Watkins are clients of First Equity. The plaintiffs invested in the Pan Am notes, allegedly because in reliance on the *Corporation Records* report, they anticipated that accrued interest would be paid if the securities were converted. However, when the notes were converted into common stock in August 1985, no adjustment was made for accrued interest. Consistent with the prospectus and the indenture, the value which the plaintiffs received upon the conversion was based on the principal value of the notes.

Based on these facts, the plaintiffs have alleged both negligent misrepresentation and fraud against the defendant.

---

**1.** The price of a one-year subscription to *Corpo-*     *ration Records* is approximately $1,300.00.

## DISCUSSION

The defendant raises both constitutional and common-law arguments in support of its motion to dismiss. Because the common law supports its position, we do not address the constitutional issues.

### A. *Negligent Misrepresentation*

■ It is widely recognized that in the absence of a contract, fiduciary relationship, or intent to cause injury, a newspaper publisher is not liable to a member of the public for a non-defamatory negligent misstatement of an item of news, "unless he wilfully ... circulates it knowing it to be false, and it is calculated to and does ... result in injury to another person." 58 American Jurisprudence 2d *Newspapers, Periodicals & Press Assns.* § 22 (1971). One of the seminal cases for this proposition is *Jaillet v. Cashman,* 115 Misc. 383, 189 N.Y.S. 743 (Sup.Ct.1921), *aff'd mem.,* 202 A.D. 805, 194 N.Y.S. 947 (App.Div. 1922), *aff'd mem.,* 235 N.Y. 511, 139 N.E. 714 (1923).[2]

The reason for the *Jaillet* rule is one of practical expediency. First, it is simply impossible to attain perfection in the publishing business. Second, the potential number of persons to whom a publication might become available is without limit. Therefore, without the rule, publishers would face "the spectre of unlimited liability,"[3] and such risk would have a staggering deterrent effect on the dissemination of printed material.[4]

The plaintiffs point out that there are certain differences between *Corporation Records* and ordinary general circulation newspapers and argue that the two are therefore not comparable. There is, for example, the notably higher price of *Corporation Records* and the fact that it is marketed primarily to securities brokers rather than the public at large. These dissimilarities do not, however, persuade us that the duties and obligations of the publisher of *Corporation Records* should not be measured by the same standard as that applicable to the publisher of a newspaper. *See Jaillet, supra,* (provider of stock ticker service held comparable to the publisher of a newspaper).

The plaintiffs also argue that because First Equity was a subscriber to *Corporation Records,* the defendant had a greater duty of accuracy to First Equity than it would have had to an ordinary reader. We disagree. A subscriber is not significantly different from other purchasers of a publication merely because he pays for it on a more or less regular basis. With respect to readers of a publication who do not pay for it at all, a subscriber is not significantly different, either; a subscription is not the sort of contract which precludes application of the *Jaillet* rule. *See Gutter v. Dow, Jones, Inc.,* 22 Ohio St.3d 286, 490 N.E.2d 898 (1986) (publisher of *Wall Street Journal* not liable to a subscriber for a non-defamatory negligent misrepresentation in a news article relied on by the reader in choosing a securities investment).

We are aware that under general principles of tort law,

[o]ne who, in the course of his business ... supplies false information for the guidance of others in their business transactions, is subject to liability for

---

**2.** The *Jaillet* rule is applicable under Florida law as well. See *infra,* pp. 118–119.

**3.** For example, the defendant points out that the issue of *Corporation Records* in question contains descriptions of debt securities with a combined face value of over $65 billion.

**4.** In *DeBardeleben Marine Corporation v. United States,* 451 F.2d 140 (5th Cir.1971), the Fifth Circuit held that the defendant could be held liable for errors in a mariner's chart which it published. In that case, however, the court found the *Jaillet* principles inapplicable, for two reasons. First, it found that although the purse of the Government was not unlimited, the eco-

nomic factor was not a concern. Second, it found that the United States had a duty of due care which private publishers did not. The duty of the United States arose "out of the statutory and traditional ... role played by the Government in furnishing charts to mariners with the legal demand they be effectively available and used". *Id.* at 149. In light of the principles underlying it, *DeBardeleben* has been confined to cases involving the United States and has not been extended to suits against private publishers. *See Herceg v. Hustler Magazine, Inc.,* 565 F.Supp. 802 (S.D.Tex.1983).

pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). This statement of the law would seem to be at odds with the principle stated above which would shield newspapers publishers from liability for mere negligence absent a special relationship with the injured person. It is not. The tort liability indicated above is limited to the "loss suffered ... by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it." *Id.* The subscribers and readers of a newspaper or similar publication hardly constitute a limited class. Indeed it is the fact that the size of this group is indeterminate which raises the potential for unlimited liability, which concern is the foundation of the *Jaillet* rule.

Finally, the plaintiffs argue that the defendant effectively warrants the reliability of the content of *Corporation Records* because it touts the reliability of the publication and markets it as providing "action-worthy" information. This suggestion is meritless. It is one thing to say that the defendant extols the virtues of its publication. It is quite another to say that it anywhere assumes responsibility for 100 percent accuracy.

For all the reasons discussed above, we find that the *Jaillet* rule precludes the plaintiffs' negligent misrepresentation claims.[5]

### B. *Fraud*

The plaintiffs have alleged scienter in the alternative, claiming that the defendant either knew that the description of the bonds was incorrect, or had no knowledge as to its accuracy, or that the circumstances were such that the defendant ought to have known, if it did not know, of the inaccuracy of the description.

Neither party disputes that to the extent the plaintiffs' allegations of scienter are based on actual knowledge, the complaint states a claim for fraud.[6] Moreover, that fraud claim is stated with sufficient particularity to satisfy Fed.R.Civ.P. 9(b), because knowledge or state of mind may be averred generally. However, the defendant argues that the plaintiffs do not state a cause of action for fraud to the extent that their claims of fraud are based on what amounts to negligent misrepresentation. In response, the plaintiffs argue that Florida law applies to their claims, and that Florida law "relaxes" the scienter element of fraud. They claim that under Florida law, they may establish scienter merely by proving that the alleged misrepresentation was made without knowledge as to its truth or falsity or that it was made under circumstances in which the defendant ought to have known, if it did not know, that the misrepresentation was false.

We need not decide whether New York or Florida law would apply to this issue, because as explained below, we disagree with the plaintiffs' construction of Florida law. Under our own construction, we reach the same conclusion under either New York or Florida law.

The plaintiffs cite several cases in support of their proposition that under Florida law, a negligent misrepresentation will support a claim of fraud. Of these several cases, however, none involved a publisher

---

5. The reasoning of *Brocklesby v. United States,* 767 F.2d 1288 (9th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986), cited by the plaintiffs, does not alter our conclusion. In *Brocklesby,* the publisher of a defective instrument approach chart was held liable to the survivors of crew members who died in an airplane crash. However, liability in that case was premised on a strict products liability theory. This is not an appropriate basis for liability in the case at bar and *Brocklesby* is therefore inapposite.

6. However, the parties have practically ignored this claim that the defendant published the description of the bonds with actual knowledge that the description was erroneous. This is not surprising. First of all, the continued vitality of the defendant's business depends on its reputation for reliability. Moreover, the defendant did not receive any direct pecuniary benefit from the sales of the bonds at issue, and therefore had no motive to misrepresent their value.

or other defendant in a comparable position. This point is important, because if Florida follows the *Jaillet* rule, these authorities are inapplicable to the instant case.

 No party has cited any Florida case indicating whether Florida does or does not follow the *Jaillet* rule, and our own research has revealed none. We are not without guidance on this issue, however. In *Cardozo v. True*, 342 So.2d 1053 (Fla. Dist.Ct.App.1977), the District Court of Appeal of Florida, Second District, considered the question of whether a bookseller could be held liable under a warranty theory to the purchaser of a cookbook for injuries caused by poisonous ingredients used in a recipe. Although the issue in that case was different from that raised here, and although the court expressly declined to consider the liability of an author or publisher under similar circumstances, the case is nonetheless instructive. It is instructive because in it, the court affirmed its adherence to the principles underlying the *Jaillet* rule. The court noted that "ideas hold a privileged position in our society", and that "[t]hose who are in the business of distributing the ideas of other people perform a unique and essential function. To hold those who perform this essential function liable, regardless of fault, ... would severely restrict the flow of the ideas they distribute." *Id.* at 1056–57. *See also Layne v. Tribune Co.*, 108 Fla. 177, 146 So. 234 (1933) (because it is virtually impossible for a newspaper to verify every item of news, knowledge of falsity or intent to harm cannot be presumed from the fact of error alone). Because the principles underlying the *Jaillet* rule are sound, and because the Florida courts have indicated their concurrence with those principles, we find that a Florida court would, if presented with the question, follow the *Jaillet* rule. Therefore, notwithstanding that Florida law might under ordinary circumstances allow a negligent misrepresentation to support a claim of fraud, it does not when the charge of fraud is leveled against a newspaper publisher or other defendant in a comparable position.

Because both New York and Florida follow the *Jaillet* rule, the law of both states precludes the plaintiffs' fraud claims except to the extent that they are based on the allegation that the defendant actually knew that the description of the bonds was incorrect.

## CONCLUSION

For the reasons described above, the motion to dismiss the complaint is granted, except to the extent that the plaintiffs allege fraud based on actual knowledge.

SO ORDERED.