Diane **HERCEG** and Andy **Vines**, Plaintiffs,

v.

**HUSTLER MAGAZINE, INC.,** Defendants.

Civ. A. No. H–82–198.

United States District Court, S.D. Texas, Houston Division.

June 6, 1983.

Robert B. Wallis, Haynes & Fullenweider, Houston, Tex., for plaintiffs.

Jack Price, Austin, Tex., for defendants.

MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

Before the Court is defendant Hustler Magazine, Inc. (Hustler's) Motion to Dismiss for failure to state a claim. Plaintiffs have sued Hustler in tort and under the

wrongful death statute, under the theories of negligent publication and strict liability. They allege that defendant negligently published an inflammatory article on the practice of "autoerotic asphyxiation" entitled, "Orgasm of Death," which caused the death of plaintiffs' son and brother. They make the novel claims that the article is both an attractive nuisance for which defendant has a duty of social responsibility, and a dangerous instrumentality or a defective, unreasonably dangerous product. Having considered the arguments of the parties and the applicable law, the Court is of the opinion that the Motion should be GRANTED and the action DISMISSED without prejudice, with leave to amend.

Plaintiffs' claims under strict liability are without support in existing case law. The Court is aware of no court which has held that the content of a magazine or other publication is a product within the meaning of § 402A of the Second Restatement of Torts. Rather, they have held to the contrary. In *Cardozo v. True,* 342 So.2d 1053, 1056–7 (Fla.Dist.Ct.App.1977), for example, the court held that a bookseller's strict liability under implied warranty under the UCC is limited to the physical properties of books, not the material communicated.

Neither does the case law support plaintiffs' causes of action for negligent publication of an article which they allege harmed a reader. "Negligent" publication is a cause of action which arose in defamation cases. No court has held that the written word is either an attractive nuisance which would impose a special duty on defendant magazine, or a dangerous instrumentality for which defendant would be strictly liable. A magazine article is easily distinguishable from items such as gunpowder, fireworks, gasoline and poison which have an obvious physical effect. *See Erwin v. Dunn,* 201 S.W.2d 240 (Tex.Civ.App.—Galveston, 1947, writ ref'd n.r.e.). It is not, for example, like a slingshot with physical properties which cause harm, and which raises the question for a jury whether, balancing of the magnitude of the risk against the utility of defendants conduct for society, the risk of harm in a particular case is

unreasonable. *Moning v. Alfono,* 400 Mich. 425, 254 N.W.2d 759 (1977).

As a federal district court noted in an analogous case in which a child and his parents sued television broadcasting companies in negligence for their failure to use ordinary care to prevent the child from duplicating atrocities he saw on television

> [t]he question of duty and proximate cause are initially at least, questions of law and here, '[i]t becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have occurred.' Prosser Law of Torts, Section 42 at 244–45 (4th Ed.1971).

*Zamora v. Columbia Broadcasting System,* 480 F.Supp. 199, 201 (S.D.Fla.1979). Outside the realm of defamation, the only authority which the court finds which for imposition of a duty on a publisher with regard to the contents of its publications are those in which the defendant was the United States. For example, in *Reminga v. United States,* 631 F.2d 449 (6th Cir.1980), the government was held to have a duty with respect to the publication of a navigational chart or map which, because it was inaccurate, caused harm to the plaintiff. Similarly, in *DeBardeleben Marine Corp. v. United States,* 451 F.2d 140, 149 (5th Cir. 1971), the United States Court of Appeals for the Fifth Circuit noted that "the duty arises out of the statutory and traditional position of the role played by the government in furnishing charts to mariners with the legal demand they may be effectively available and used . . . ." Hustler Magazine, Inc. is a private publisher and certainly has not been appointed to perform any public function. There is, therefore, no legal basis for defendant's duty with respect to the content of its publications.

Thus, in the instant case, as in *Zamora,* because "there is no obligation [as asserted by plaintiffs] presently articulated in the law, the merit—the legal validity—of the claim must be examined." And that, in turn, involves policy considerations such as "the practical need to draw the line some-

where so that liability will not crush those on whom it is put." *Zamora v. Columbia Broadcasting System,* 480 F.Supp. 199, 201 (1979), citing Harper and James Law of Torts, Vol. 2 (1956), p. 1132, Section 20.4. Courts have found that First Amendment considerations, discussed below, argue against the liability of a publisher for a reader's reactions to a publication, absent incitement.[1]

Defendant has raised, in defense to plaintiffs' claims, the protection of the First Amendment to the United States Constitution. In *Zamora,* where plaintiffs complained of a child's "exposure to 'violence' and his alleged response to it," the court found among other defects that "[t]he complaint [did] not suggest . . . that the minor plaintiff was 'incited' or goaded into unlawful behavior by a particular call to action," and concluded that "the imposition of civil responsibility for damages would have an impact upon, and indeed act as restraint on, the defendants' exercise of their asserted first amendment rights," citing *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). It noted that "the right of the broadcaster to disseminate should not be inhibited by those members of the public who are particularly sensitive or insensitive." *Zamora* 480 F.Supp. at 205 (footnotes omitted).

In a similar case, *Olivia N. v. National Broadcasting System,* 126 Cal.App.3d 488, 178 Cal.Rptr. 888 (1981), the plaintiff sued a television company for the broadcast of a program depicting a crime which viewers imitated, harming plaintiff. She conceded that she could not prove incitement and based her claim of negligence on the fore- seeability of the harm, alleging that defendant "should have known susceptible persons might imitate the crime enacted." The California court applying the standard for incitement set forth in *Brandenburg v. Ohio,* 395 U.S. 444, 447–8, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969), i.e., whether the speech is "directed to inciting or producing imminent lawless action and . . . likely to incite or produce such action," held that "[t]he trial court's determination that the First Amendment bars appellant's claim where no incitement is alleged must be upheld." The Court distinguished the case of *Weirum v. RKO General, Inc.,* 15 Cal.3d 40, 123 Cal.Rptr. 468, 539 P.2d 36 (1975), in which a broadcaster had "urge[d] listeners to act in an inherently dangerous manner," and concluded that, "imposing liability on a simple negligence theory here would frustrate vital freedom of speech guarantees."

The Rhode Island Supreme Court recently affirmed summary judgment for defendant television station in a negligence and strict product liability action by parents of a child who killed himself while imitating a "hanging" stunt which the station broadcast. The court did not reach the merits of the negligence and products liability claims but held that the First Amendment barred recovery because, as a matter of law, plaintiffs had not brought their suit within any of the classes of speech—obscenity,[2] fighting words, defamatory invasion of privacy and incitement to immediate harmful conduct—not protected by the United States Constitution. *DeFilippo v. N.B.C.,* 8 Med.L. Rptr. 1872 (R.I. June 15, 1982).

1. The court notes, however, that a theory of negligent publication has been used in an action against the publisher of a textbook for injuries caused to a student by methyl alcohol vapors which exploded where use of the alcohol was recommended and suggested by the publisher without warnings. *Carter v. Rand McNally,* C.A. 76–1864–F (D.Mass) (unreported case cited in Swartz, "You can't judge a book by its cover," Trial, Nov. 1981, 89 at 110. The action settled for $1.1 million.

2. Plaintiffs, in the case at bar, assert in a Supplemental Reply to Defendant's Motion to Dis- miss that "the magazine which is the subject of the lawsuit [i.e., the defendant, but not, the Court notes, the specific article which plaintiffs allege caused the harm] . . . is clearly obscene," and argue that defendants are not entitled to First Amendment protection on that ground. Plaintiffs, however, draw no causal connection between this asserted obscenity of defendant and the harm which they plead, and it appears that it is incitement and not obscenity which is the relevant category of protected speech on the facts of their case.

Plaintiffs, in the instant case, unlike plaintiffs in *Olivia N.,* have not conceded that there was no incitement. Their complaint, however, like that in *Olivia N.,* alleges simply, foreseeably, that Hustler "should have known [the article] would encourage young boys to hang themselves." It does not allege incitement as an exemption from First Amendment protection, and plaintiffs have not addressed the issue except to assert in their Memorandum in Opposition to the Motion that their case "surely falls within the boundaries of Justice Holmes' famous analogy attributing liability to one who shouts 'fire!' in a crowded theatre."

On defendant's Motion to Dismiss, the Court, in order to grant the Motion, must find "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is conceivable that plaintiffs could prove facts showing that Hustler's article was "directed to inciting or producing" the death which occurred and was "likely to incite or produce" the death, which would entitle them to relief.[3]

Accordingly, it is ORDERED, ADJUDGED, and DECREED that defendant's Motion be and hereby is GRANTED, and that this action be and hereby is DISMISSED with leave to amend and to add an allegation of incitement within ten (10) days of entry of this Order. Failure to do so will result in the entry of a Final Judgment of dismissal.

---

**3.** The court notes, however, that the article begins with an "*Editor's Note*," stating in italics, "*HUSTLER emphasizes the often-fatal dangers of the practice of 'auto-erotic asphyxia'* and recommends that readers seeking unique forms of sexual release DO NOT ATTEMPT this method. The facts are presented here solely for an educational purpose."