563 A.2d 123

**David H. SMITH, Individually and as Administrator of the Estate of Patricia Smith, Deceased, Appellant,**

**v.**

**Robert LINN, D.O., Lyle Stuart, Inc., Dixon–Shane, Inc., Howard Rosenfeld, M.D., Robard Corporation of Cherry Hill, N.J.**

**v.**

**HANCE BROTHERS and White Company Wilson Foods Corporation, Delare Associates, Inc., General Foods Corporation, U.S. Gelatin, Division of Peter Cooper Corporation.**

Superior Court of Pennsylvania.

Argued March 30, 1989.

Filed Aug. 7, 1989.

Thomas B. Rutter, Philadelphia, for appellant.

Albert B. Gerber, Philadelphia, for appellees.

Before MONTEMURO, TAMILIA and MONTGOMERY, JJ.

TAMILIA, Judge:

Appellant David H. Smith, individually and as administrator of the estate of Patricia Smith, deceased, appeals sum-

mary judgment granted September 30, 1988 in favor of appellee, Lyle Stuart, Inc. Patricia Smith died in July of 1977 allegedly as a result of the sudden onset of complications caused by a liquid protein diet which she was following, as set forth in a book entitled, *When Everything Else Fails ... The Last Chance Diet.*

The trial court Opinion explains the appellant brought an action seeking to recover for the death of the decedent against the publisher of the book, Lyle Stuart, Inc., appellee herein, as well as numerous other defendants. The matter was transferred from arbitration[1] to Common Pleas Court by an April 11, 1979 Order of court. As a result of dismissals and settlements, Lyle Stuart, Inc., was the only defendant remaining in the case when it filed its motion for summary judgment on January 13, 1988. After entertaining oral argument on the motion, the Court en banc granted summary judgment. Appellant filed a notice of appeal on October 13, 1988.

The trial court states the factual history as follows.

Lyle Stuart initially met Robert Linn, D.O. in 1975 after Lyle Stuart read a magazine article about Dr. Linn's liquid protein dietary program. Lyle Stuart used the diet to lose weight. Lyle Stuart, an experienced publisher, suggested to Dr. Linn that they do a book about the diet. An agreement was reached for Dr. Linn to author, and Lyle Stuart to publish, the book in March of 1976. The book was to be geared to the general public, as opposed to a medical type text.

When the book had gone to galley proofs, Lyle Stuart, president of Lyle Stuart, Inc., approached Dr. George Blackburn of Harvard Medical School, a leading researcher in the field of nutrition to review the book. Blackburn and Lyle Stuart met in June of 1976 to discuss Blackburn's review of the book. Plaintiff contends that Blackburn's proposals were not incorporated by Lyle Stuart

---

**1.** The trial court notes the action was commenced by complaint under the Health Care Services Malpractice Act. *See* Slip Op., Vogel, P.J., 9/30/88, p. 2.

into the book. Defendant contends any proposed changes were either made, if they were important, or they were essentially semantic in nature. The book was eventually published in a form essentially similar to the galley proof reviewed by Dr. Blackburn.

Patricia Smith purchased a copy of *"The Last Chance Diet"* in January of 1977. She followed the diet under the care of her physician, Howard Rosenfeld, M.D. She had lost over 100 pounds by June 1977 when she died from cardiac failure that plaintiff alleges was caused by decedent's following the diet.

(Slip Op. at 3–5.)

■ On appeal appellant argues the trial court erred in basing its decision on the first amendment of the United States Constitution and thereby immunizing the appellee publishing company from civil liability for its publication. Instead, appellant urges the book is an incitement to immediate unreflecting action such as the action arising from shouting "Fire!" in a crowded theater, and as such, it should not have been accorded first amendment protection. Appellant argues this Court should reverse the decision of the trial court that the diet book publisher was within its first amendment right to freedom of speech, and find instead, for the first time, that a publisher is liable to a reader for negligent publication of a book which it published. Appellant further asserts that support for a rule of negligent publication can be derived from our Supreme Court's decisions in *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971), and *Robb v. Gylock Corp.*, 384 Pa. 209, 120 A.2d 174 (1956), as well as the Restatement of Torts, Second, particularly sections 388, 390, 310, 311, 557A and 402A.

In reviewing whether the trial court erred in granting summary judgment, we must apply the following standard of review:

A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. Any doubt must be resolved against the moving party.

. . . .

However, parties seeking to avoid the entry of summary judgment against them may not rest upon the averments contained in their pleadings. On the contrary, they are required to show, by depositions, the answers to interrogatories, admissions or affidavits, that there is a genuine issue for trial. Pa.R.C.P. 1035(d). The court, in ruling on a motion for summary judgment, must ignore controverted facts contained in the pleadings.

*Loomis Lake Ass'n by Hughes v. Smith*, 366 Pa.Super. 612, 619–20, 531 A.2d 1152, 1155–56 (1987) (citations omitted).

The trial court, in its Opinion, has set forth a thorough review of decisions of various jurisdictions in the United States, both state and federal, which have dealt with the issue of imposition of civil liability on a publisher for alleged "negligent publication". Appellant does not contest that portion of the trial court Opinion but, rather, attacks the court's determination that the diet book publisher here is protected by the first amendment. The appellant argues the decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), sets a precedent for us to balance the life and health of an individual against the greed of a publisher in knowingly publishing "a false and dangerous food diet book". (Appellant's brief at 32.) We derive no such precedent from that case. Further, appellant contends the Supreme Court's decision in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), is supportive of his position. Again, we

conclude that decision, which held that false statements in a credit report did not involve matters of public concern which would require a showing of actual malice to recover presumed and punitive damages, to be inapposite to his argument before this Court. Appellant does not attempt to explain his reasoning for relying on *Dun*, but merely cites it in his brief. Additionally, appellant argues we should draw an analogy to the decision in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963), regarding libel of a public figure. We do not find it appropriate for this Court to do so. Finally, regarding appellant's likening of the instant case to the shouting of "Fire!" in a crowded theater,[2] and his assertion the diet book is therefore without first amendment protection, the analogy appears to be inapposite.

As appellant does not point us to any established exception to first amendment protection, we cannot find the court erred in finding publication of *The Last Chance Diet* to be protected under the first amendment.

■ Next, addressing appellant's contention that sections 310, Conscious Misrepresentation Involving Risk of Physical Harm, 311, Negligent Misrepresentation Involving Risk of Physical Harm, and 557A, Fraudulent Misrepresentations Causing Physical Harm,[3] of the Restatement of Torts apply to the instant facts, we agree with the trial court's conclusion that nothing in those sections suggests they were intended to apply to publishers, nor would case law cited by appellant suggest those sections may be applied in such a way.

■ Appellant also urges Restatement of Torts, Second, sections 388, Chattel Known to be Dangerous for Intended

2. Appellant appears to be referring to the Opinion written by Mr. Justice Holmes in *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919), although he offers this Court no case authority for his contention.

3. Although the trial court did not specifically address section 557A, we find the court's reasoning, that nothing in the Restatement sections relied upon by appellant suggests their applicability to publishers of information, to apply to section 557A as well.

Use, and 390, Chattel for Use by Person Known to be Incompetent, are applicable to impose civil damages on the publisher for the harm it caused to the decedent. Appellant contends Lyle Stuart, Inc., is as responsible as if he had directly sold the liquid protein to the decedent and concomitantly with the sale had supplied her with the book as a form of "package insert". In this vein, appellant argues the Supreme Court decision in *Incollingo, supra,* which stated the drug manufacturer, Parke, Davis and Company, was required to accompany a prescription drug which it had marketed with a warning of its potentially dangerous side effects, to be given to the prescribing doctor. We reject the argument that these Restatement sections and *Incollingo* are controlling of the issue before us, as our review of sections 388 and 390 and *Incollingo* leads us to agree with the trial court's ruling that they are not applicable under the facts of the instant case. Instructions by a manufacturer which accompany medication or use of certain marketed goods cannot be equated with publication of books which espouse a writer's theory, opinions or ideology.

█ Lastly, we agree with the trial court's rejection of appellant's argument that the diet book is a product and was defective under the Restatement of Torts, Second, § 402A. As was observed by the trial court in its Opinion, no appellate court in any jurisdiction has held a book to be a product for purposes of section 402A; in fact, two courts have expressly refused to hold that a publication is a product. *See Herceg v. Hustler Magazine, Inc.,* 565 F.Supp. 802 (S.D. Texas 1983) (refusing to find a publication to be a product within the meaning of section 402A); *Cardozo v. True,* 342 So.2d 1053 (Fla.Dist.Ct.App.1977) (distinguishing the tangible portion of the book, the binding and printing, which is a good, from the thoughts and ideas contained therein, which are not). Appellants also cite *Kercsmar v. Pen Argyl Area School District,* 1 Pa.D. & C.3d 1 (1976), for the proposition that the book is a product. *Kercsmar,* however, as was found by the trial court, is not dispositive of the instant action for several reasons. The

Common Pleas Court of Northampton County in *Kercsmar* denied the preliminary objections of the publisher of a high school chemistry book which was alleged to have been followed by the minor plaintiff who was injured while conducting a high school chemistry experiment. The Northampton Common Pleas Court deemed the text book to be a good within the context of section 2–105(1) of the Uniform Commercial Code, and the averment of an injury caused by the description of the chemistry experiment contained in the text to be sufficient to meet the requisites of a breach of an implied warranty, so that the granting of a demurrer would be inappropriate. While *Kercsmar* does suggest at least that a trial court believed the contents of a book to be a good, as an appellate court, we may decline to accept that view. Further, as the trial court in the instant matter observed, no other court has followed the *Kercsmar* view. Additionally, we agree with the trial court that the cases cited by appellant as imposing liability under section 402A upon publishers of aviation and navigation charts is not akin to the problem involved herein, especially since no first amendment concerns are present in those cases. In those cases, extremely technical and detailed materials were involved, upon which a limited class of persons imposed absolute trust having reason to believe in their unqualified reliability. As such they took on the attributes of a product and are not protected by the first amendment. *See* Slip Op. at 28–29. With this decision that the book is not a product for purposes of section 402A, we need not address appellee's argument regarding adequacy of warnings, nor appellant's rebuttal to the warning issue, found in the reply brief of appellant.

Because we decide today the court properly granted summary judgment, we need not address the alternative argument raised by appellee and responded to by appellant in his reply brief that Lyle Stuart, Inc., is not the proper defendant-publisher since Bantam Books, Inc., published the paperback edition which was purchased by the decedent and appellee published the hard cover edition. We note, how-

ever, a review of the license agreement dated May 6, 1976 between Lyle Stuart, Inc., as licensor and Bantam Books, Inc., as licensee (see reply brief of appellant, exhibit 2) suggests appellant is correct in his assertion that Lyle Stuart, Inc., retained a degree of control over the paperback edition; indeed, during his deposition, Lyle Stuart admitted Bantam Books, Inc., could make no change to the text of the publication without his personal approval and authorization. (See Pre-trial Examination of Lyle Stuart, 9/16/82, p. 89).

As appellant has not persuaded this Court by any existing case law that its cause of action against Lyle Stuart, Inc., can withstand judicial scrutiny, in view of the first amendment right of the publisher to publish the diet book in question, we find no error on the part of the trial court in determining there was no genuine issue of material fact necessitating trial and in accordingly entering summary judgment.

We note the United States Supreme Court has recently upheld the first amendment right for one convicted under a state law for burning a United States flag during the 1984 Republican National Convention, an act denounced by our President and which offends many Americans' sense of patriotism. Texas v. Johnson, —— U.S. ——, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Nevertheless, the Supreme Court found the first amendment guarantee of the individual's freedom of expression prevails. Id. Also, it is evident that without scrupulous protection of the first amendment right by the courts, governments can oppress the people and in effect rewrite history when the people are suppressed in their expressions, as witnessed by recent events in China. Although we are moved by the grievous circumstances surrounding the instant case, we will not disturb the proper ruling of the trial court in granting summary judgment on the basis of the first amendment right of the publisher.

Order granting summary judgment affirmed.