**Wilhelm WINTER; Cynthia Zheng, Plaintiffs–Appellants,**

v.

**G.P. PUTNAM'S SONS, Defendant–Appellee.**

**No. 89–16308.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1991.

Decided July 12, 1991.

Paul L. Hendrix, Bruce E. Krell, San Francisco, Cal., for plaintiffs-appellants.

Neil L. Shapiro, Brobeck, Phleger & Harrison, with Kenneth M. Kwartler, Cooper, White & Cooper, on brief, San Francisco, Cal., for defendant-appellee.

Before SNEED, TANG and THOMPSON, Circuit Judges.

SNEED, Circuit Judge:

Plaintiffs are mushroom enthusiasts who became severely ill from picking and eating mushrooms after relying on information in *The Encyclopedia of Mushrooms,* a book published by the defendant. Plaintiffs sued the publisher and sought damages under various theories. The district court granted summary judgment for the defendant. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

*The Encyclopedia of Mushrooms* is a reference guide containing information on the habitat, collection, and cooking of mushrooms. It was written by two British authors and originally published by a British publishing company. Defendant Putnam, an American book publisher, purchased copies of the book from the British publisher and distributed the finished product in the United States. Putnam neither wrote nor edited the book.

Plaintiffs purchased the book to help them collect and eat wild mushrooms. In 1988, plaintiffs went mushroom hunting and relied on the descriptions in the book in determining which mushrooms were safe to eat. After cooking and eating their harvest, plaintiffs became critically ill. Both have required liver transplants.

Plaintiffs allege that the book contained erroneous and misleading information concerning the identification of the most deadly species of mushrooms. In their suit against the book publisher, plaintiffs allege liability based on products liability, breach of warranty, negligence, negligent misrepresentation, and false representations. Defendant moved for summary judgment asserting that plaintiffs' claims failed as a matter of law because 1) the information contained in a book is not a product for the purposes of strict liability under products liability law; and 2) defendant is not liable under any remaining theories because a publisher does not have a duty to investigate the accuracy of the text it publishes. The district court granted summary judg-

ment for the defendant. Plaintiffs appeal. We affirm.[1]

## II.

### DISCUSSION

A book containing Shakespeare's sonnets consists of two parts, the material and print therein, and the ideas and expression thereof. The first may be a product, but the second is not. The latter, were Shakespeare alive, would be governed by copyright laws; the laws of libel, to the extent consistent with the First Amendment; and the laws of misrepresentation, negligent misrepresentation, negligence, and mistake. These doctrines applicable to the second part are aimed at the delicate issues that arise with respect to intangibles such as ideas and expression. Products liability law is geared to the tangible world.

### A. Products Liability

The language of products liability law reflects its focus on tangible items. In describing the scope of products liability law, the Restatement (Second) of Torts lists examples of items that are covered.[2] All of these are tangible items, such as tires, automobiles, and insecticides.[3] The American Law Institute clearly was concerned with including all physical items but gave no indication that the doctrine should be expanded beyond that area.

The purposes served by products liability law also are focused on the tangible world and do not take into consideration the unique characteristics of ideas and expression. Under products liability law, strict

---

1. This court has jurisdiction through diversity. 28 U.S.C. § 1332 (1988). California tort law applies. *Sherman v. Mutual Benefit Life Ins. Co.,* 633 F.2d 782, 784 (9th Cir.1980).

2. The California courts look to the Restatement (Second) of Torts, § 402A for guidance on products liability law. *See Brooks v. Eugene Burger Management Corp.,* 215 Cal.App.3d 1611, 1624–25, 264 Cal.Rptr. 756, 763–64 (1989).

3. The relevant comment states:
   The rule stated in this Section is not limited to the sale of food for human consumption, or other products for intimate bodily use, although it will obviously include them. It ex-

tends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer. Thus the rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide. It applies also to products which, if they are defective, may be expected to and do cause only "physical harm" in the form of damage to the user's land or chattels, as in the case of animal food or a herbicide.
Restatement (Second) of Torts § 402A comment d (1965).

liability is imposed on the theory that "[t]he costs of damaging events due to defectively dangerous products can best be borne by the enterprisers who make and sell these products." *Prosser & Keeton on The Law of Torts*, § 98, at 692–93 (W. Keeton ed. 5th ed. 1984). Strict liability principles have been adopted to further the "cause of accident prevention ... [by] the elimination of the necessity of proving negligence." *Id.* at 693. Additionally, because of the difficulty of establishing fault or negligence in products liability cases, strict liability is the appropriate legal theory to hold manufacturers liable for defective products. *Id.* Thus, the seller is subject to liability "even though he has exercised all possible care in the preparation and sale of the product." Restatement § 402A comment a. It is not a question of fault but simply a determination of how society wishes to assess certain costs that arise from the creation and distribution of products in a complex technological society in which the consumer thereof is unable to protect himself against certain product defects.

Although there is always some appeal to the involuntary spreading of costs of injuries in any area, the costs in any comprehensive cost/benefit analysis would be quite different were strict liability concepts applied to words and ideas. We place a high priority on the unfettered exchange of ideas. We accept the risk that words and ideas have wings we cannot clip and which carry them we know not where. The threat of liability without fault (financial responsibility for our words and ideas in the absence of fault or a special undertaking or responsibility) could seriously inhibit those who wish to share thoughts and theories. As a New York court commented, with the specter of strict liability, "[w]ould any author wish to be exposed ... for writing on a topic which might result in physical injury? e.g. How to cut trees; How to keep bees?" *Walter v. Bauer*, 109 Misc.2d 189, 191, 439 N.Y.S.2d 821, 823 (Sup.Ct.1981) (student injured doing science project described in textbook; court held that the book was not a product for purposes of products liability law), *aff'd in part & rev'd in part on other grounds*, 88 A.D.2d 787, 451 N.Y.S.2d 533 (1982). One might add: "Would anyone undertake to guide by ideas expressed in words either a discrete group, a nation, or humanity in general?"

Strict liability principles even when applied to products are not without their costs. Innovation may be inhibited. We tolerate these losses. They are much less disturbing than the prospect that we might be deprived of the latest ideas and theories.

Plaintiffs suggest, however, that our fears would be groundless were strict liability rules applied only to books that give instruction on how to accomplish a physical activity and that are intended to be used as part of an activity that is inherently dangerous. We find such a limitation illusory. Ideas are often intimately linked with proposed action, and it would be difficult to draw such a bright line. While "How To" books are a special genre, we decline to attempt to draw a line that puts "How To Live A Good Life" books beyond the reach of strict liability while leaving "How To Exercise Properly" books within its reach.

Plaintiffs' argument is stronger when they assert that *The Encyclopedia of Mushrooms* should be analogized to aeronautical charts. Several jurisdictions have held that charts which graphically depict geographic features or instrument approach information for airplanes are "products" for the purpose of products liability law. *See Brocklesby v. United States*, 767 F.2d 1288, 1294–95 (9th Cir.1985) (applying Restatement for the purpose of California law), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986); *Saloomey v. Jeppesen & Co.*, 707 F.2d 671, 676–77 (2d Cir.1983) (applying Restatement for the purpose of Colorado Law); *Aetna Casualty & Surety Co. v. Jeppesen & Co.*, 642 F.2d 339, 342–43 (9th Cir.1981) (applying Nevada law); *Fluor Corp. v. Jeppesen & Co.*, 170 Cal.App.3d 468, 475, 216 Cal.Rptr. 68, 71 (1985) (applying California law). Plaintiffs suggest that *The Encyclopedia of Mushrooms* can be compared to aeronautical charts because both items contain representations of natural features and both are intended to be used while engag-

ing in a hazardous activity. We are not persuaded.

Aeronautical charts are highly technical tools. They are graphic depictions of technical, mechanical data. The best analogy to an aeronautical chart is a compass. Both may be used to guide an individual who is engaged in an activity requiring certain knowledge of natural features. Computer software that fails to yield the result for which it was designed may be another. In contrast, *The Encyclopedia of Mushrooms* is like a book on how to *use* a compass or an aeronautical chart. The chart itself is like a physical "product" while the "How to Use" book is pure thought and expression.[4]

Given these considerations, we decline to expand products liability law to embrace the ideas and expression in a book.[5] We know of no court that has chosen the path to which the plaintiffs point.[6]

## B. *The Remaining Theories*

As discussed above, plaintiffs must look to the doctrines of copyright, libel, misrepresentation, negligent misrepresentation, negligence, and mistake to form the basis of a claim against the defendant publisher. Unless it is assumed that the publisher is a guarantor of the accuracy of an author's statements of fact, plaintiffs have made no case under any of these theories other than possibly negligence. Guided by the First Amendment and the values embodied therein, we decline to extend liability under this theory to the ideas and expression contained in a book.

---

4. In reversing a lower court opinion that aeronautical charts are not products, the *Fluor* court made the following comments:

   [The trial court] explained that it believed strict liability principles are applicable only to items whose physical properties render them innately dangerous, e.g., mechanical devices, explosives, combustible or flammable materials, etc. This belief was erroneous.

   ... [A]lthough a sheet of paper might not be dangerous, per se, it would be difficult indeed to conceive of a salable commodity with more inherent lethal potential than an aid to aircraft navigation that, contrary to its own design standards, fails to list the highest land mass immediately surrounding a landing site.

   *Fluor Corp. v. Jeppesen & Co.,* 170 Cal.App.3d 468, 475–76, 216 Cal.Rptr. 68, 71–72 (1985). Plaintiffs argue that this language shows that California courts would not draw a line between physical products and intangible ideas.

   The *Fluor* language, however, cannot be stretched that far. The court was simply discussing the fact that under products liability law, the injury does not have to be caused by impact from the physical properties of the item. In other words, the injury does not have to result because a compass explodes in your hand, but can result because the compass malfunctions and leads you over a cliff. *Cf. Vandermark v. Ford Motor Co.,* 61 Cal.2d 256, 261, 37 Cal.Rptr. 896, 899, 391 P.2d 168, 171 (1964) (in bank) (negligence action allowed against manufacturer for injuries that resulted when automobile brakes malfunctioned causing accident). This is quite different from saying that liability can be imposed for such things as ideas which have no physical properties at all.

5. Plaintiffs also have brought a claim under Restatement (Second) § 402B for false represen-

tation. This section provides strict liability for misrepresentations concerning the character or quality of "chattels" sold. To the extent that it is inappropriate to apply § 402A because strict liability should not be applied to the transmission of ideas, the same logic would apply to § 402B which also imposes strict liability.

6. *See Jones v. J.B. Lippincott Co.,* 694 F.Supp. 1216, 1217–18 (D.Md.1988) (nursing student injured treating self with constipation remedy listed in nursing textbook; court held that Restatement § 402A does not extend to dissemination of an idea of knowledge); *Herceg v. Hustler Magazine, Inc.,* 565 F.Supp. 802, 803–04 (S.D. Tex.1983) (person died after imitating "autoerotic asphyxiation" described in magazine article; court held that contents of magazines are not within meaning of Restatement § 402A); *Walter v. Bauer,* 109 Misc.2d 189, 190–91, 439 N.Y.S.2d 821, 822–23 (Sup.Ct.1981) (student injured doing science project described in textbook; court held that the book was not a defective product for purposes of products liability law because the intended use of a book is reading and the plaintiff was not injured by reading), *aff'd in part & rev'd in part on other grounds,* 88 A.D.2d 787, 451 N.Y.S.2d 533 (1982); *Smith v. Linn,* 386 Pa.Super. 392, 398, 563 A.2d 123, 126 (1989) (reader of *Last Chance Diet* book died from diet complications; court held that book is not a product under Restatement § 402A), *aff'd,* 587 A.2d 309 (1991); *cf. Cardozo v. True,* 342 So.2d 1053, 1056–57 (Fla.Dist.Ct.App.) (transmission of words is not the same as selling items with physical properties so that where a bookseller merely passes on a book without inspection, the thoughts and ideas within the book do not constitute a "good" for the purposes of a breach of implied warranty claim under the UCC), *cert. denied,* 353 So.2d 674 (1977).

■ In order for negligence to be actionable, there must be a legal duty to exercise due care. 6 B. Witkin, *Summary of California Law,* Torts § 732 (9th ed. 1988). The plaintiffs urge this court that the publisher had a duty to investigate the accuracy of *The Encyclopedia of Mushrooms'* contents. We conclude that the defendants have no duty to investigate the accuracy of the contents of the books it publishes. A publisher may of course assume such a burden,[7] but there is nothing inherent in the role of publisher or the surrounding legal doctrines to suggest that such a duty should be imposed on publishers. Indeed the cases uniformly refuse to impose such a duty.[8] Were we tempted to create this duty, the gentle tug of the First Amendment and the values embodied therein would remind us of the social costs.[9]

Finally, plaintiffs ask us to find that a publisher should be required to give a warning 1) that the information in the book is not complete and that the consumer may not fully rely on it or 2) that this publisher has not investigated the text and cannot guarantee its accuracy. With respect to the first, a publisher would not know what warnings, if any, were required without engaging in a detailed analysis of the factual contents of the book. This would force the publisher to do exactly what we have said he has no duty to do—that is, independently investigate the accuracy of the text. We will not introduce a duty we

7. *See Hanberry v. Hearst Corp.,* 276 Cal.App.2d 680, 683–84, 81 Cal.Rptr. 519, 521 (1969) (Good Housekeeping held liable for defective product because it had given the product its "Good Housekeeping's Consumer's Guaranty Seal"). In *Hanberry,* the defendant had made an independent examination of the product and issued an express, limited warranty. The defendant here has done nothing similar.

8. *See First Equity Corp. v. Standard & Poor's Corp.,* 869 F.2d 175, 179–80 (2d Cir.1989) (investors who relied on inaccurate financial publications to their detriment may not recover their losses); *Jones v. J.B. Lippincott Co.,* 694 F.Supp. 1216, 1216–17 (D.Md.1988) (publisher not liable to nursing student injured in treating self with remedy described in nursing textbook); *Lewin v. McCreight,* 655 F.Supp. 282, 283–84 (E.D.Mich.1987) (publisher not liable to plaintiffs injured in explosion while mixing a mordant according to a book on metalsmithing); *Alm v. Van Nostrand Reinhold Co.,* 134 Ill.App.3d 716, 721, 89 Ill.Dec. 520, 524, 480 N.E.2d 1263, 1267 (1985) (publisher not liable to plaintiff injured following instructions in book on how to make tools); *Roman v. City of New York,* 110 Misc.2d 799, 802, 442 N.Y.S.2d 945, 948 (Sup.Ct.1981) (Planned Parenthood not liable for misstatement in contraceptive pamphlet); *Gutter v. Dow Jones, Inc.,* 22 Ohio St.3d 286, 291, 490 N.E.2d 898, 902 (1986) (Wall Street Journal not liable for inaccurate description of certain corporate bonds); *Smith v. Linn,* 386 Pa.Super. 392, 396, 563 A.2d 123, 126 (1989) (publisher of diet book not liable for death caused by complications arising from the diet), *aff'd,* 587 A.2d 309 (1991); *see also Herceg v. Hustler Magazine, Inc.,* 565 F.Supp. 802, 803 (S.D.Tex.1983) (finding magazine publisher not liable to family of youth who died emulating "autoerotic asphyxiation" as described in article but granting leave to amend incitement claim); *cf. Libertelli v. Hoffman–La Roche,* 7 Media L.Rptr. (BNA) 1734, 1736 (S.D.

N.Y.1981) (publisher of Physician's Desk Reference not liable for failure to include drug warning because the work was like a published advertisement of products rather than a reference work); *Yuhas v. Mudge,* 129 N.J.Super. 207, 209–10, 322 A.2d 824, 825 (1974) (magazine publisher not liable for injury caused by advertised product); *Beasock v. Dioguardi Enters., Inc.,* 130 Misc.2d 25, 30–31, 494 N.Y.S.2d 974, 979 (Sup.Ct.1985) (truck association not liable for injuries caused by products manufactured in adherence to industry standards adopted, approved and published by association).

The *Weirum* case, cited by the plaintiffs, is inapposite. *Weirum v. RKO General, Inc.,* 15 Cal.3d 40, 123 Cal.Rptr. 468, 539 P.2d 36 (1975) (in bank). In *Weirum,* a radio station ran a promotional contest for teenagers encouraging them to pursue a travelling disc jockey. The station broadcast periodic updates on the disc jockey's location and encouraged teenagers to scramble to the next place. Two teens, who were speeding after the disc jockey, caused a fatal traffic accident. The radio station was held liable. In upholding the jury verdict, the *Weirum* court carefully limited its holding to the facts of the case, which the court described as "a competitive scramble in which the thrill of the chase to be the one and only victor was intensified by the live broadcasts which accompanied the pursuit." *Id.* at 48, 123 Cal.Rptr. at 473, 539 P.2d at 41; *see also id.* at 46 n. 4, 123 Cal.Rptr. at 471 n. 4, 539 P.2d at 39 n. 4 (noting that duty determinations must be made case by case). A publisher's role in bringing ideas and information to the public bears no resemblance to the *Weirum* scenario.

9. A stronger argument might be made by a plaintiff alleging libel or fraudulent, intentional, or malicious misrepresentation, but such is not contended in this case. *Gutter v. Dow Jones, Inc.,* 490 N.E.2d at 902 n. 4.

have just rejected by renaming it a "mere" warning label. With respect to the second, such a warning is unnecessary given that *no* publisher has a duty as a guarantor.

For the reasons outlined above, the decision of the district court is AFFIRMED.