In re SSE INTERNATIONAL
CORP., Debtor.

Gary L. SMITH, Trustee, Plaintiff,

v.

IRON & GLASS BANK, Defendant.

Bankruptcy No. 94–20968–MBM.
Adversary No. 96–2116–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 1, 1996.

**668**

Steven Shreve, Glosser & Shreve, Pittsburgh, PA, for Gary L. Smith, Trustee.

Christopher J. Richardson, Pittsburgh, PA, for Iron & Glass Bank.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

### STATEMENT OF FACTS

This opinion is issued in response to, and subsequent to the hearing of July 31, 1996, regarding, the motion for summary judgment filed by Gary L. Smith, Chapter 7 trustee and plaintiff herein. This adversary proceeding, which was initiated by plaintiff, involves a request for a determination by this Court under 11 U.S.C. § 506(a) that Iron & Glass Bank, defendant herein, does not have a security interest in the funds ($80,641) collected by plaintiff pursuant to a settlement agreement approved via a previous order of this Court.[1] The funds represent amounts claimed to have been due the debtor pursuant to a "license" agreement with Cefrac Limited and, ultimately as Cefrac's successor

in interest, KSR International Limited (hereafter collectively referred to as "Cefrac"). A copy of the outline of such agreement has been filed with this Court as plaintiff's Exhibit A.

Pursuant to the "license" agreement, the debtor agreed "to furnish ... [k]now-how to Cefrac" in return for a percentage of Cefrac's gross profit derived from Cefrac's sales of its own "[p]roduct." The agreement defines Cefrac's "[p]roduct" as "heat resistant steel castings and fabrications including (without limitation) products for use in heat treatment and reheat furnaces." The agreement also defines the debtor's "[k]now-how" as "information of any kind relating to the design, construction, manufacture, installation, sale and/or use of ... [Cefrac's p]roduct." The debtor also agreed to refrain from supplying its know-how or products embodying such know-how to anybody other than Cefrac within an agreed upon geographic region.

Defendant maintains that it has a security interest in the settlement funds because (a) it has a valid, pre-petition security interest in, inter alia, "[a]ll ... [of the debtor's] right, title and interest in all present and future accounts receivable," and (b) any amounts that the debtor would have received from Cefrac pursuant to the "license" agreement constitute payments on accounts receivable. Plaintiff argues otherwise, maintaining that (a) defendant's security interest, which admittedly covered the debtor's accounts receivable, did not list general intangibles of the debtor, and (b) any amounts payable by Cefrac to the debtor are general intangibles because they would not be in payment of accounts.

### DISCUSSION

■ This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and this matter is a core proceeding which this Court may hear and determine pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(K), (b)(2)(O). Additionally, this Court

---

**1.** This Court's order of February 6, 1996, granted plaintiff's Motion No. 95–2184, which sought approval for essentially an amendment to the aforementioned settlement agreement. The settlement agreement itself was approved by order of Bankruptcy Judge Joseph L. Cosetti on December 13, 1994 (Motion No. GS–9).

may appropriately dispose of this matter by way of a summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure) because the parties do not dispute any of the facts material to its resolution.

Both parties agree that defendant has a valid, pre-petition security interest in accounts of the debtor. However, the parties dispute whether amounts that the debtor received from Cefrac pursuant to the "license" agreement constitute payments on accounts. This dispute can be isolated further by focusing on whether the debtor's right to payment from Cefrac constitutes an account or a general intangible. "Account" is defined as "[a]ny right to payment for goods sold or leased or for services rendered ... whether or not it has been earned by performance." 13 Pa.Cons.Stat.Ann. § 9106 (Purdon 1984). "General intangibles" are defined as "[a]ny personal property (including things in action) *other than* goods, *accounts,* chattel paper, documents, instruments and money." *Id.* (emphasis added).

Clearly, given the negative definition of "general intangibles," the debtor's right to payment from Cefrac cannot be both an account and a general intangible. Moreover, the debtor's right to payment is not a good, document, instrument, chattel paper, or money. Therefore, if it is not an account, it must be a general intangible. Whether such right to payment is an account hinges on whether it evolved from a *sale* or *lease* of *goods* from, or *rendering of services* by, the debtor to Cefrac. The debtor's right to payment pursuant to the "license" agreement evolved from the debtor's furnishing of its know-how to Cefrac. Therefore, if the debtor's know-how constitutes a good, and the debtor's method of furnishing such know-how to Cefrac was by sale or lease, the debtor's right to payment in return from Cefrac constitutes an account. Alternatively, if the debtor can be deemed to have rendered services to Cefrac as a result of its furnishing of its know-how

to Cefrac, then the debtor's right to payment in return from Cefrac constitutes an account.

### I. *Whether the debtor's furnishing of its know-how constitutes a sale or lease of goods?*

This issue can be approached from two different directions; in particular, by determining (a) whether the substance of what the debtor furnished was a "good," or (b) whether the debtor's method of furnishing constitutes a sale or lease. Proceeding to answer the first of these two subissues, this Court must initially ascertain precisely the nature of that which was furnished by the debtor to Cefrac before it can determine whether it also constitutes goods. Although the agreement provides that the debtor "shall furnish ... [its k]now-how to Cefrac," it is clear to this Court that the debtor provided much more than merely a reproduction of the debtor's ideas and thoughts. As support for this finding, this Court points to (a) the debtor's agreement not to supply its know-how, or products embodying such know-how, to other entities within a certain geographical region (referred to in the agreement as the "Territory"), (b) the debtor's grant of a right of first refusal to Cefrac regarding "new developments not falling within the definition [of k]now-how or improvements thereto," and (c) Cefrac's undertaking to hold the debtor's know-how in confidence. On the basis of these provisions in particular, and when viewed in the context of the overall agreement, this Court finds that the subject of this agreement was actually the debtor's property rights in its know-how, which are commonly referred to as "intellectual property."

"Goods" are defined as "[a]ll things which are movable at the time the security interest attaches ..., but ... not includ[ing, inter alia,] ... general intangibles." 13 Pa. C.S.A. § 9105(a). This definition "is similar to that contained in [13 Pa.C.S.A. § 2105(a) ]."[2] 13 Pa.C.S.A. § 9105(a), Uniform Commercial Code comment 3 (1972).

---

**2.** "Goods" are defined in 13 Pa.C.S.A. § 2105(a) as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Division 8) and things in action." 13 Pa.C.S.A. § 2105(a) (Purdon 1984).

Intellectual property, or rights to thoughts, ideas, and concepts protected by patent, copyright, or state personal property law, are widely accepted as not constituting goods and, therefore, are not covered under 13 Pa.C.S.A. § 2105(a). Rodau, *Computer Software: Does Article 2 of the Uniform Commercial Code Apply?*, 35 Emory L.J. 853, 874–76 (1986) ("intellectual property . . . falls outside the scope of article 2"); *Advent Systems Ltd. v. Unisys Corporation*, 925 F.2d 670, 675 (3rd Cir.1991) (drawing analogies to music and the contents of a lecture, the court concluded that the content of computer programs is not a good; however, just as a laser-readable disk and a book are goods, so to is software because it represents a medium that is "tangible, moveable and available in the marketplace"); *Comshare, Inc. v. U.S.*, 27 F.3d 1142, 1145 n. 2 (6th Cir.1994) ("an intellectual property right . . . is not covered" "by the sales provisions of the [Uniform Commercial] Code"); *Smith v. Linn*, 386 Pa.Super. 392, 563 A.2d 123, 127 (1989) (the contents of a book are not a good), *aff'd*, 526 Pa. 447, 587 A.2d 309 (Pa.1991); *Cardozo v. True*, 342 So.2d 1053, 1056 (Fla.Dist.Ct. App.1977) (books are goods but the "thoughts and ideas conveyed thereby" are not); *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 457 F.Supp. 765, 769 (E.D.N.Y. 1978) (Triangle purchased custom designed software, which was a good; however, "the ideas or concepts involved in the . . . software remained Honeywell's intellectual property"). This principle can be confusing, however, because tangible mediums embodying intellectual property are goods under 13 Pa.

C.S.A. § 2105. *Id.* Authority also exists to the effect that intellectual property "per se . . . fall[s] within the category of general intangibles," Bahrick, *Security Interests in Intellectual Property*, 15 AIPLA Q.J. 30, 32 (1987); *In re Emergency Beacon Corp.*, 23 UCC Rep.Serv. 766 (S.D.N.Y.1977) ("patent rights, tradename, customer lists, books and records and . . . [the] right to manufacture or sell emergency beacons and related electronic equipment are general intangibles within the meaning of § 9-106 of the Uniform Commercial Code"); 13 Pa.C.S.A. § 9106, Uniform Commercial Code comment (1972) (goodwill, literary rights, rights to performance, copyrights, trademarks, and patents are all examples of "general intangibles"), which would mean (a) that intellectual property is not a good pursuant to 13 Pa.C.S.A. §§ 2105(a) and 9105(a), and (b) that any right to payment for its use would not be an account pursuant to 13 Pa.C.S.A. § 9106.

■ Applying these principles to this case, because the subject of the "license" agreement in question was the debtor's rights to its know-how and not merely a reproduction of the debtor's ideas and thoughts, the debtor furnished Cefrac with intellectual property rather than goods. This determination is made independent of whether the tangible medium by which the debtor furnished such rights to Cefrac itself constituted a good.[3] Consequently, even if the "license" agreement memorialized a sale or lease between the debtor and Cefrac—a point also open to conjecture[4] but now rendered moot—such sale or lease was not of goods in any event and, thus, did not establish an account.

**3.** This holding prevents a strange, if not nonsensical, result that could occur were this Court to hold that the debtor's intellectual property rights in its know-how were goods merely because they were embodied in a tangible medium that itself constitutes a good. Because "[a] security interest in . . . goods . . . may be perfected by the secured party's taking possession of the collateral," 13 Pa.C.S.A. § 9305, an entity could perfect its security interest in the debtor's intellectual property, if it were a good, by merely taking possession of a tangible medium, such as a written manual, embodying such intellectual property. Perfection by such method could have disastrous results, however, because mere possession of the tangible medium by the secured entity would undoubtedly fail to notify other entities of such security interest, which is the point of perfection in the first place. Therefore, (a) perfec-

tion of a security interest in intellectual property must be by filing in accordance with 13 Pa.C.S.A. § 9302(a), and (b) this principle further supports the overwhelming authority for the position that intellectual property is not a good.

**4.** Notwithstanding language in the final paragraph of the "Outline of Agreement" to the effect "that detailed *license* terms will now be prepared to formali[z]e these arrangements," defendant maintains that the debtor did not grant a license to Cefrac. Presumably, defendant wishes this Court to find that the arrangement instead comprises a sale or lease. This Court notes, however, that were it necessary to resolve this subissue, in all likelihood the arrangement would not be viewed as a sale or lease involving the debtor's know-how.

■ Defendant seems to argue in its brief that the debtor has sold goods because Cefrac ultimately sold goods (labelled "Product" in the agreement). This argument is clearly incorrect, however, for the sale by Cefrac of its goods cannot be attributed to the debtor notwithstanding Cefrac's use of the debtor's thoughts and ideas (ie., the "know-how"). For the same reason, defendant is incorrect in asserting that the debtor's right to payment constitutes an account simply because it *related* to the sale or lease of goods by Cefrac. This assertion, which is based upon language in *In re Gordon Car and Truck Rental, Inc.*, 80 B.R. 12 (N.D.N.Y. 1987), to the effect that "the 1972 [Pennsylvania Commercial Code defined] accounts ... to include ... contract rights ... so long as they relate to the sale or lease of goods or the rendering of services," is misplaced for such contract rights, in order to constitute accounts under 13 Pa.C.S.A. § 9106, must relate to a sale of goods or rendering of services *by the debtor.*[5]

## II. Did the debtor, by furnishing its know-how to Cefrac, thereby also render services?

■ The debtor, merely on the basis of the furnishing of its "know-how," did not also render services to Cefrac. To render services implies an undertaking to perform a "[d]uty or labor." Black's Law Dictionary 1368 (6th ed. 1990); 21 Pennsylvania Law Encyclopedia *Labor* § 21 (1959) at 156. Thus, for the debtor to have served Cefrac this Court holds that the debtor would have also been obligated to utilize its know-how for the benefit of Cefrac. Instead, the debtor merely "furnish[ed]" such know-how without performing any additional labor or providing any assistance whatsoever. Defendant, nevertheless, asserts that know-how, in and of itself, must constitute services because to find otherwise "would take all professional/technical services out of the realm of account generating performance." This assertion must fail, however, because the debtor's initial act of creating its know-how was undertaken for its own benefit rather than to satisfy a duty to Cefrac, or anyone else for that matter. For an act of creating know-how to constitute a rendering of services, or an account generating performance, it must be undertaken for the benefit and/or at the behest of someone else (ie., one cannot render services to oneself).

## CONCLUSION

The debtor did not sell or lease goods to Cefrac pursuant to their agreement. The

---

This arrangement does not seem to comprise a sale of the debtor's property rights in its know-how because absolute title therein did not seem to pass to Cefrac, which is the hallmark of a sale. 13 Pa.C.S.A. § 2106; Black's Law Dictionary 1337 (6th ed. 1990); *see also Franklin v. Jackson*, 847 S.W.2d 306 (Tex.Ct.App.1992) ("A transaction is a sale ... only if it makes an absolute transfer of full title ... If any lesser interest is transferred it is not a sale ..."). This conclusion is supported by the fact that (a) the debtor maintained the right to supply its know-how or products embodying such know-how to other entities outside of the "Territory," (b) the transaction was revocable over the 10 year term of the agreement at the will of Cefrac, and was revocable during such term by the debtor as well under certain circumstances, and (c) the agreement restricted Cefrac's ability to assign its interest therein.

The arrangement also does not seem to comprise a lease of the debtor's property rights in its know-how because Cefrac does not appear to possess an estate or interest therein, which is a factor distinguishing a lease from a license. Black's Law Dictionary 889, 919–20 (6th ed. 1990). Although not conclusive of the issue,

paragraphs 2.1 and 2.2 of the "Outline of Agreement" (categorized as the "Know–How Grant") utilize the phrases "[the debtor] shall furnish" and "Cefrac's use," which indicates that the debtor intended to grant Cefrac the use, rather than the possession, of its know-how. The same is also indicated by the debtor's retention of the right to terminate the arrangement if, inter alia, Cefrac were unsuccessful in its use of the debtor's know-how as set forth in paragraphs 11.3—11.3.2 of the "Outline of Agreement."

5. Defendant also relies upon *Klingner v. Pocono International Raceway, Inc.*, 289 Pa.Super. 484, 433 A.2d 1357 (1981), for the apparent proposition that a general intangible may ultimately be converted into an account receivable. Defendant misconstrues *Klingner*, however, because, in that case, the account receivable was generated from a sale of goods (an inventory of tickets) by the account holder. The tickets constituted a general intangible in the hands of the purchaser and not in the hands of the account holder. However, in this debtor's case, its know-how is a general intangible in its hands and, consequently, a sale or lease thereof by the debtor would not have generated an account.

debtor also did not render services to Cefrac by virtue of furnishing Cefrac with its know-how. Therefore, the debtor's right to payment from Cefrac pursuant to their agreement does not constitute an account and, consequently, must be categorized as general intangibles. Because defendant's security interest did not extend to the debtor's general intangibles notwithstanding that it covered accounts of the debtor, defendant does not have any interest in the settlement funds in question (ie., the $80,641). Therefore, plaintiff's motion for summary judgment and request for relief is **GRANTED.** An appropriate order will be entered.